GLORIANA B. SMITH, Respondent, *v.* THE CITY OF NEW-BURGH, Appellant.

Under the provisions of the act of 1867 (chap. 88, Laws of 1867), authorizing the common council of the city of Newburgh to improve the water works of said city, no power was given to the common council to enter into a lease of premises for the purposes specified, where the rent reserved for the term is more than $10,000, without causing a notice to be published, and a special election to be held, as prescribed by said act. (§ 5.)

Accordingly, *held,* that a lease so executed was void, and could not be enforced against the city ; and this, although the lease was for a long term, and the rent reserved was payable in semi-annual installments, each much less than the sum specified. The whole liability was incurred at the time of the execution of the lease.

*Weston* v. *City of Syracuse* (17 N. Y., 110), distinguished.

Defendant's water commissioners, after entering into such a lease, made a statement to the common council recommending the construction of a reservoir " on the property recently leased by the city for that purpose," and submitted an estimate of expense. A resolution was passed by the common council directing a special election for the purpose of voting on the subject. A notice of such election specifying the items of expense

was published, the items did not include the rent, and nothing was stated in the notice in regard to the lease. *Held*, that a vote authorizing a construction of the reservoir did not ratify or validate the lease.

Where the officers of a municipal corporation fail to pursue the strict requirements of a statutory enactment in contracting for the municipality, it is not bound, nor is it bound by any acts of its officers in ratification of such illegal contract. A person dealing with a municipal body is bound to see that the provisions of the statute under which it is acting. are fully complied with; and when this is not done no subsequent act of the municipal officers can make the contract effective.

*Nelson* v. *The Mayor* (63 N. Y., 535), distinguished.

(Argued April 4, 1879 ; decided April 22, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the facts appear sufficiently in the opinion.

*C. F. Brown*, for appellant. The defendant's common council had not power · to make the lease in suit, and the rent being in excess of $10,000, and not having been authorized by a vote of taxpayers, it is void. (Laws of 1867, chap. 88, §§ 4, 5; *Ellis* v. *Mayor, etc.*, 1 Daly, 102.) The lease being void for want of authority in the common council to make it, there could be no ratification so as to bind the city except perhaps by an act of the Legislature. (*Brown* v. *Mayor, etc.*, 63 N. Y., 238, 244; *In re Van Antwerp*, 56 id., 261; *Peterson* v. *Mayor, etc.*, 17 id., 449; *Brady* v. *Mayor, etc.*, 20 id., 312; *Cowen* v. *Village of West Troy*, 43 Barb., 48; *Smith* v. *Kidd*, 68 N. Y., 130, 142; *Owning* v. *Hall*, 9 Pet., 629; *Baldwin* v. *Burrows*, 47 N. Y., 212; *Hodges* v. *City of Buffalo*, 2 Den., 512; *Halstead* v. *Mayor, etc.*, 3 N. Y., 431; *McDonald* v. *Mayor, etc.*, 68 id., 23; 15 How., 428; 17 N. Y., 242; 10 id., 508; 1 Daly, 102; *Francis* v. *City of Troy*, 7 N. Y. Weekly Dig., 184.)

*Samuel Hand*, for respondent. The lease in suit is not void by reason of the provisions of section 5 of chapter 88,

Laws of 1867. (*Weston* v. *City of Syracuse*, 17 N. Y., 110.) It was ratified by the special election and subsequent resolutions of the common council. (*Peterson* v. *Mayor*, 17 N. Y., 449; *People* v. *Flagg*, id., 584; *Hanson* v. *Dexter*, 36 Me., 516.) The money having been raised by tax to compensate plaintiff she is entitled to be paid, even if the lease was not in strict conformity to law. (*Nelson* v. *Mayor, etc.*, 63 N. Y., 535; *McDonald* v. *Mayor, etc.*, 68 id., 23.)

MILLER, J. This action was brought to recover $750 and interest, for rent upon a lease made by the plaintiff to the defendant, for a certain parcel of land in the city of Newburgh for the term of twenty years, at an annual rent of $1,500, for the first ten years, and $2,100 for the next ten years, payable semi-annually, with the privilege to the city to purchase the property at $30,000 at any time during the term. The lease was made upon the recommendation of the water commissioners to the common council of said city, for the purpose of constructing a distributing reservoir upon the premises. The instrument bears date the eleventh day of January, 1871, and recites that the water commissioners, under the direction of the common council, had made an agreement with the lessor for a lease of the premises described, for the improvement of the water works of said city, and in order to supply it with water. It is claimed by the defendant's counsel that the common council had no power to make such a contract; and even if they had authority to lease lands for water purposes, under chapter 88 of the Session Laws of 1867, which authorizes the common council of the city of Newburgh to enlarge, alter and improve the water works of said city, to acquire title to lands, and to raise money on the bonds of said city therefor; that the rents reserved and the amount named in the lease being in excess of $10,000, and not having been authorized by a vote of the taxpayers, pursuant to the fifth section of the act, the lease was void.

The authority to enter upon land or water, to make agree-

ments with the owners for the purchase of any easement in any lands, or for the taking of water or for any acquisition of land, or right therein, or to acquire title to such lands, water or other property, is fully conferred, and the way pointed out in which the rights named may be obtained, in the first four sections of the act in question. The fifth section of the act then provides as follows : " In case the water commissioners of said city shall at any time deem that the interests of said city call for and require the expenditure of money, exceeding *the sum of ten thousand dollars*, in enlarging, altering and improving the water works of said city, or for any of the purposes of this act, before any such enlargement or improvement shall be entered upon, or any contract or purchase relating thereto shall be made, the said water commissioners shall make a statement thereof under their hands, stating the nature of the enlargement, alteration or improvement required, and the probable cost thereof to the best of their judgment ; and they shall deliver such statement to the common council, and it shall thereupon become the duty of the common council to cause a notice to be published and a special election to be held in the manner provided by" section 21, title 5, chapter 541 of the Laws of 1865, as amended by chapter 114 of the Laws of 1866. Even if it be conceded that the common council had the right to lease land under the act of 1867, inasmuch as the rents reserved and the price to be paid for the land, if the city authorities concluded to purchase, exceeded the sum of $10,000, and was not authorized by the vote of the taxpayers, as provided in section five last cited, I think such lease was void, and could not be enforced. The rents in all would amount to $36,000, the purchase price, if made at any time during the term, to $30,000; so that, in no contingency was a less sum than $10,000 to be paid by the city. That the rent was distributed for a long period of time and to be paid semi-annually, did not lessen the amount. The whole liability was incurred upon the execution of the lease, and the common council undertook to bind the city for an

amount exceeding $10,000, in direct violation of section five last cited.

The point made that the statute does not mean that an improvement can be made without a vote of the taxpayers, where the annual expense of maintaining it, or continuing it, after it has been established, will exceed that sum, we think is not well taken; and it is quite obvious that the meaning of the language employed is, that the sum required shall not exceed that sum in the aggregate. A different construction would authorize an expenditure from year to year which might ultimately amount to a larger sum of money than was intended to be placed within the power of the common council to authorize. If the obligation incurred at the time was in excess of the sum named, it has no analogy to a case in which incidental expenses may be incurred from time to time, in making necessary repairs, which add to the original cost, or to the payment of the annual wages of engineers, or other expenses in forcing up the water in a distributing reservoir.

The counsel for the respondent cites the case of *Weston* v. *The City of Syracuse* (17 N. Y., 110), to uphold the doctrine that the payments named in the lease were not within the limitation of the fifth section of the act of 1867. That case was disposed of upon the peculiar phraseology of the provisions of the charter of the city which affected the question considered, and, I think, has no application to the case at bar. It is very evident that the common council exceeded its authority in taking the lease in question; and that the expenditure was made in direct violation of the statute, unless it was sanctioned by a vote of a majority of the taxpayers. It is claimed that this was done, at a special election held on the 5th day of May, 1871, and that it was included in the $50,000, then authorized for a reservoir upon the premises in question. In support of this view, it appears that the water commissioners made a statement to the common council, recommending the construction of a reservoir " on the property recently leased by the city for

that purpose," and submitted an estimate of the proposed improvement, as follows: "For main pipe, gates, etc., $118,500. For reservoir, $50,000. For gate-house and connections, $6,500." A resolution was passed by the common council, directing a special election for the purpose of voting on the subject. A notice of said election was given, in which the foregoing items and the full amount was stated as necessary to be raised for the purpose of increasing the water supply; and persons voting thereat were required to designate on their ballots whether they vote for or against the improvement recommended. Nothing is stated in the notice in regard to the lease, its terms or the amount which would be required for the same, or for the acquisition of land for the reservoir, or otherwise; and the citizens were in no form advised that any portion of the money to be raised was to be appropriated in payment of the amount named in the lease for rent or for the purchase of the land. The construction of the reservoir certainly did not include, and could not, within any just rule of interpretation, be considered as including the cost of the lease or the purchase price of the land. The notice contained no statement whatever in regard to the lease, as the statute required should be done, if it was intended to embrace any improvement of that kind. In point of fact, the lease had been executed in the month of January previous to the notice, and, as we have seen, the water commissioners, in their communication, referred to the property as already leased by them, and made no request to submit any question to the taxpayers as to the renting or the purchasing of the land. Nor was any reservoir ever built upon the land; but the money was expended for other purposes connected with the water works. The election was not for the purpose of ratifying what had been done, but to provide for the future, and for a distinct and different purpose. The resolution on its face shows that $50,000 was not to be used for the payment of rents or the purchase of land, but in building a reservoir of 20,000,000 of gallons capacity; and the taxpayers had no reason to suppose when

they voted for the $175,000, that they ratified and confirmed a lease previously executed. The land leased has never been used for any purpose connected with the waterworks, the moneys raised appropriated to no such object, and the contract for the lease was entered into without the authority of law and in direct conflict with the provision cited. Nor is there anything in the case to establish, as is claimed by the respondent's counsel, that the natural conformation of the ground was such as to form a pond or basin suitable for the storage of water; on the contrary, it appears that it was never used for any such purpose. There is no valid ground for claiming that either the special election, or any resolutions or acts of the water commissioners, or the payment of rent, ratified the acquisition of this property.

It is urged that the city has kept possession of the demised premises since the lease was executed, and never offered to surrender the same, and the money being actually raised by taxation to compensate the plaintiff for her property, she is entitled to be paid, even if the lease was not in conformity to law. As we have seen, no money was raised to pay for the rent or the land mentioned in the lease. It is admitted by the answer that the defendant, for a portion of the time, let out said premises for the pasturage of cattle; but this, we think, was not sufficient to bind the defendant, for no such ratification of an illegal act can bind a corporate municipality. A subsequent ratification cannot make valid an unlawful act without the scope of corporate authority. An absolute excess of authority by the officers of a corporation, in violation of law, cannot be upheld; and where the officers of such a body fail to pursue the strict requirements of a statutory enactment, under which they are acting, the corporation is not bound. In such cases, the statute must be strictly followed; and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective: (*Peterson* v. *The Mayor*, 17 N. Y., 449; *Cowen* v. *The Village of West Troy*, 43 Barb.,

48; *Brown* v. *The Mayor*, 63 N. Y., 239, 244; Dillon on Mun. Corp., 463; *Hodges* v. *The City of Buffalo*, 2 Den., 110; *McDonald* v. *The Mayor*, 68 N. Y., 23, 27.)

The plaintiff was bound, in taking the lease, to see that it was not in violation of law, and failing to do this, has no ground for claiming that the illegal contract which she has made should be enforced. The case of *Nelson* v. *The Mayor*, 63 N. Y., 535, (as explained in *McDonald* v. *The Mayor*, 68 N. Y., 23,) is relied upon by the respondent's counsel; but we think it is not analogous. The materials, for the price of which the action was brought in that case, were used by the city, and the value thereof received from the property owners, by means of assessments; and hence, the city had enjoyed the benefits of the same. Here the property has not been of any use for purposes for which it was intended, and cannot be made available. No money or advantage has been realized in any form for the same. As the lease, under which it was attempted to be acquired, is void, the land belongs to the plaintiff, and she has a perfect right at any time to assert her title and to take possession of the same. The last case cited, (*McDonald* v. *The Mayor, supra,*) is adverse to the plaintiff's position, and upholds the doctrine that a person dealing with the agents of a municipal corporation, has no right to presume that they are acting within the line of their duty, but must be careful to see that they are acting within the provision of the law which confers authority upon them. As the plaintiff, under no circumstances is entitled to recover, it is not necessary to consider some other questions raised.

The judgment must be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, J., absent at argument.

Judgment reversed.