LAMBOGLIA v. THE SCHOOL BOARD OF GUAYAMA.

APPEAL from the District Court of Guayama.

No. 58.—Decided June 22, 1907.

CONTRACTS—SCHOOL BOARD—CONTRACTS SIGNED SEPARATELY BY THE MEMBERS OF THE BOARD WHEN NOT IN SESSION—RATIFICATION OF BOARD.—A contract executed and signed individually by the members of a school board when not in session, although the form of the contract is legal, cannot be considered as having been executed by the board itself, unless the board should ratify it in regular session, as it has the power to do, and in such a case the contract would be binding as though executed by the board in so far as not *ultra vires.*

ID.—NOVATION.—The novation of a contract in order that it may be binding should be clear and by mutual consent, and the existence of such mutual consent must be proved beyond a doubt with respect to the intervention of the contracting parties

ID.—RESCISSION—APPEAL—CONTRADICTORY EVIDENCE.—The alleged rescission of a contract by one of the contracting parties must be proved by definite facts showing his intention to rescind it, but where the evidence is contradictory, the findings thereon of the trial court must be accepted by the appellate court.

ID.—NOTICE OF DATE AND PLACE OF BOARD MEETINGS.—The provisions of section 9 of the School Law of 1903 are not applicable to a case involving the execution or ratification of a contract of lease of an urban estate by the school board, it being unnecessary that the formalities prescribed by that section for the holding of a session with that object in view should be complied with.

ID.—POWERS OF SCHOOL BOARDS.—The majority of the general principles governing municipal corporations are also applicable to school boards which, under section 7 of the School Law, have a very wide authority and, among other things, they are given the power to rent buildings for school purposes.

ID.—LIMITATION OF POWERS OF SCHOOL BOARDS TO CONTRACT DEBTS OR OBLIGA-
TIONS.—A contract executed by a school board extending for a term of years
to supply water, light, and the like, may be supported as valid, because it is
not a violation of the prohibition contained in section 21 of the Compiled
School Laws of 1904, and therefore a contract for the lease of a house for
a certain number of years for school purposes may be sustained and con-
sidered binding under said section.

ID.—AUTHORITY OF SCHOOL BOARD TO EXECUTE CONTRACTS BINDING ON THEIR
SUCCESSORS.—In general terms, where the particular contract is not for a
necessary thing, or where the term is unreasonably long, considering the nature
of the corporation, or when any fraud attaches, such contract will not be
sustained.

ID.—In the case at bar the school board of Guayama executed a contract for the
lease of an urban property, for the term of five years, to be used for an
industrial school; according to the testimony of witnesses, the building leased
was the only one in the city appropriate for that purpose, and it was stipu-
lated in the contract that, in case the Department of Education should erect
a building, the contarct would be considered rescinded. *Held:* That in view
of the circumstances of the case it cannot be considered that the contract of
lease executed was an unjustifiable exercise of the authority of the board.

APPEAL—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—The stenographer's notes
should not be included in the bill of exceptions or statement of facts. The
evidence should be set forth in those documents in narrative form, in accord-
ance with the numerous decisions of the Supreme Court.

The facts are stated in the opinion.

*Mr. Rossy, fiscal,* for appellant.

*Mr. José de Guzmán Benítez* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of Guayama
where the case was heard *de novo* on appeal from the Munic-
ipal Court of Guayama. A cross complaint was also filed.
The judgment of the district court sustained the complaint
and dismissed the cross complaint. During the progress of
the suit in the municipal court The People of Porto Rico,
through the Attorney General, asked leave to intervene as a
defendant, which was presumably granted, although the rec-
ord does not show the action of the court. Both the board
and The People of Porto Rico were represented in this court.

There is a statement of the case in the record which is
made to include all the documents in the case and the stenog-

rapher's notes.  The essential facts thus set forth are well expressed in the opinion of the municipal court, filed in the case, as follows:

"The complainant presents a complaint to the court against the School Board of Guayama to recover the sum of $120 and to this purpose alleges: 1. That by a contract entered into on the 26th of September, 1904, between the defendant board and the complainant, the former rented to the latter a house of mortar work belonging to him, situated in Los Jardines Street, at the corner of Hostos, in this city (which house is described more particularly in an amendment filed to the complaint), for the term of five years at the monthly rate or rent of $40, payable at the end of the month.  2. That said school board owes the complainant, inasmuch as it has not paid the monthly accrued instalments from the 26th of August, 1905, to 26th of November, 1905, or three monthly instalments, which at the rate of $40 a month make a total of $120.  3. That in spite of the efforts of the complainant he has not been able to recover the three monthly instalments and the complainant concludes his pleading praying of the court a decision in which the defendant board should be adjudged to pay $120 and the costs of the suit.  The defendant board duly answered the complaint and substantially acknowledged the proprietorship of the complainant in the house in question; admitted the existence of the contract dated September 26, 1904, to which the first paragraph of the complainant makes reference; but alleged that said contract is not the contract of the Junta Escolar of Guayama, but a private document entered into by and between the complainant Juan Lamboglia and Andrés Rodríguez, Leopold Venegas and John Zimmerman; the two first named, president and secretary of the School Board of Guayama at the date at which the before-mentioned contract was subscribed, and the latter, superintendent of the School District of Guayama; such document failing to express the character in which said gentlemen contracted; that there does not exist under the law any agreement on the part of the school board which authorizes the execution by said gentlemen of the contract in question, and that such contract or agreement was never accepted or acknowledged by the defendant corporation, nor did said corporation ever take any step tending to recognize its validity.  The defendant board besides sets forth that although it is true that on October 20, 1904, or at a period subsequent to September 1, 1904, there appears to have been an agreement by the board with respect to the approval of the rental

of à building from Señor Lamboglia, this agreement makes no reference to what particular contract it refers, and mentions no other conditions than the monthly rental without specification of duration or other stipulations.    And if that action refers to the approval or ratification of the matters set forth in the document sued upon, such agreement has no legal binding force on the defendant board, because the prerequisites set forth by section 9 of the School Law were not fulfilled at the session in which such agreement was made.    The defendant also alleged the defense that, assuming that the contract of September 26 was valid, or being void, the board ratified it in its session of October 20, to which we have referred before, even in that event the board would not owe any sum to the complainant, because the renting, if any, ceased at the end of August of last year by the voluntary relinquishment or rescission of the same on the part of the complainant Lamboglia, which rescission or relinquishment was accepted by the defendant board.   The school board denied that the complainant in this action has taken any steps against said board for the recovery of what it claims in his complaint, and it was admitted that the School Board of Guayama had rented the house described in the first paragraph of the complaint but not by virtue of the contract of September 26, but by virtue of another contract agreed upon at the session of the board which was held in the month of April, 1905, at which it was resolved that, the Industrial School of Guayama having been discontinued, the house in suit should be rented jointly with two more belonging to the complainant.    And finally the School Board of Guayama files a cross complaint against the complainant Lamboglia in order that in the event that the court should consider that the contract of September 26 had been authorized it should be declared null and void, and if such action may not be had to declare such contract rescinded, and to this end reliance is made, not alone on the foregoing allegation, but also because the contract was made in contravention of the powers given to school boards by section 21 of the law that governs them and because there was an act of superior force (vis mayor) which prevented the board from fulfilling the contract in question.    The case having been set by the court for the 30th of January, ultimo, and the court, having heard the proofs of both parties, reserved its decision.   We do not have to discuss the first allegation of the complaint as the answer admits its truth.   Similarly the defendant admits the existence of the contract of September 26, but, as in the first place, it is denied that such contract was the act of the board, we shall have to discuss before anything else this first and important question.   According to the proof it appears that on

September 26, 1904, a contract was signed by Juan Lamboglia on the one part and Andrés Rodríguez, Leopoldo Venegas and J. W. Zimmerman in representation of the school board on the other. Is the contract of these last-named gentlemen the contract of the school board? Were they authorized to bind the board to stand by and be governed by the matters set forth in that contract? According to the proof there was no resolution of the board anterior to the date of the document which authorized the execution of the same. In the record books of the school board there does not appear to have been any resolution which shows that the execution of said contract was agreed upon, nor that the gentlemen of the board who signed it were authorized to make it; and no proof having been presented to the contrary we have to take it as a settled fact that the members of the board whose names appear to the contract of September 27, 1904, in the name of the board, were not authorized to such effect. It is then the opinion of the court that the contract before us is the contract of each and every one of the members of the school board, but not the contract of the board. In order that this contract might be valid it would have been necessary that the board should authorize it at a meeting of its members. (7 L. R. A., 765.) From the proof it also appears that the signatures to that contract were obtained separately and therefore this contract could not bind the board. (64 L. R. A., 399. See also 32 L. R. A., 403.) Now then, that contract, although it was not in its inception authorized by the board, could have been thereafter ratified by it, and this is an important point which we have to decide. Because that contract, although it could not bind the board as it was not authorized, could have been accepted later—that is to say, that subsequently there could have been a ratification, either express or implied of the contract. (Art. 1278 of the Civil Code.) Let us see what the proof tells us in that regard. The contract was executed on the 26th of September, 1904, and one month thereafter the School Board of Guayama, on the 20th of October of the same year, agreed, and so it stated in the minutes of the board, 'to approve the rental of the house of Don Juan Lamboglia, situated in Los Jardines Street, at the corner of Hostos, for the industrial school, at a monthly rate of $40,' and if this were not enough we see that the board continued occupying such house and paying rent therefor up to the 26th of August of 1905 with a knowledge then of the contract. And it will not do to say, as alleges the defendant, that that agreement of October makes no reference to a definite contract and does not mention other terms than the monthly rate because if any doubt should have arisen in this regard at the trial it was clearly shown that this agreement

referred to the contract of September 26. Nor can section 9 of the School Law, which is cited, invalidate that agreement, because even assuming that the requirements of section 9 were not complied with with respect to the meeting, not on that account did that agreement cease to be valid. Let us see what section 9 says: 'Whenever the purpose of a meeting of the school board or of a municipal election is to authorize taxation or indebtedness for school purposes, such meeting or election shall not be legal for such purposes unless its object be advertised, together with the time and place of such meeting or election for at least thirty (30) days previous.' (Page 63 Laws of 1903.) In no way could that section apply to the ratification of the contract in question by the board. That section refers to those cases in which, for example, it is necessary to impose a special tax for the support or recognize a debt that the board may owe; but never could refer to the ratification of a contract on the part of a corporation of this nature, which, if in its inception, was voidable, was due to not having complied with the requirements of the law. Let us grant, however, that section 9 which is cited refers to a case as the one at bar and even accepting such hypothesis we find jurisprudence which takes the ground away from under the feet of the defendant. In the case in 27 L. R. A., it was decided by the Supreme Court of Vermont that: 'A school board is responsible and should pay a professor for his services who, although he had a void contract with the board, because of its not being made in accordance with a section of the School Law, was permitted to teach without objection.' And this is logical. A corporation in the same way as an individual cannot repudiate a contract and receive its benefits; if the contract is rescindible there should be no laches and the rescission ought to be sought in time; while this is not obtained one is obliged to obey its terms. In the case at bar a contract was signed which could not bind the defendant board because it was defective, and if these defects were subsequently cured this court does not see how that corporation could escape the payment of the rents accrued by virtue of the obligation of the contract. But this is not all that remains to be considered, for the defendant also alleges, that if there were a ratification of the contract, still that it does not owe any amount to the complainant in the matter of rent because that contract was rescinded by the parties toward the end of the month of August of 1905, and to prove such rescission the following proof is offered. That on the 26th of August of said year, at a time when the board was in public session, Sr. Lamboglia appeared before it and there overtures were made to him con-

cerning the renting of the houses belonging to him, including the renting of the house, the rental of which gives rise to this suit. That Señor Lamboglia got angry and then said he did not desire any more relations or contracts with the board, and from that moment he considered as rescinded every contract he had with the board. That the board immediately accepted this proposition, and the president so told Sr. Lamboglia. The question to decide is whether such simple oral manifestations could rescind a written contract. The answer of the court is 'no.' It is a general rule that the same formalities as are required for the execution of the contract are required for its rescission. The actions and words of Señor Lamboglia in the session of August 26, 1905, were, if they happened, as was shown in the proof at the trial, words and actions of protest, and the subsequent acts of the board, and of Sr. Lamboglia show this to be the fact. There does not exist, therefore, in the opinion of the court, any action of rescission which could be included in section 1257 and 1258 *et seq.* of the Civil Code. We have very little to say with respect to the allegation of the novation of the contract. The resolution of the school board deciding that, the industrial schools having been discontinued, there should be rented for graded schools the house which such industrial school occupied, and others of Sr. Lamboglia, at the monthly rental of $65, such resolution could not bind Señor Lamboglia. That was an agreement which, according to the proof, Señor Lamboglia never accepted, although the contrary is alleged in the answer, and a novation ought, under the law, to be by mutual consent. The same result follows with respect to the other allegations of the answer which refers to the fact that the complainant never took any steps as against the board to obtain what he claims, for the contrary was proven at the trial. There is then a cause of action.''

The municipal court, as subsequently the district court, found in favor of the complainant and against the defendant. From the latter court an appeal was taken to this tribunal. We shall first discuss the question of whether there was any contract in existence between the School Board of Guayama and the plaintiff. It is contended on behalf of the appellant that the contract of September 26, 1904, being signed by three individuals was not in anywise a contract of the defendant corporation, but merely a contract between the persons who signed the same and the complainant Lamboglia. It is not

denied that this instrument is signed by persons who describe themselves as being officers of the board. There is no doubt that the form of the contract is legal; supposing it to be a contract between the three persons named and the complainant. It is a binding contract between these officers and the complainant, and meets the requirements of section 1228 of the Civil Code, which are: 1. The consent of the contracting parties. 2. A definite object which may be the subject of the contract. 3. The cause for the obligation, which may be established. Can this contract so entered into be considered a contract of the School Board of Guayama? We have seen that in form it was not a void contract. Don Leopoldo Venegas, Don Andrés Rodríguez and Mr. John Zimmerman were, respectively, the president, the secretary and the superintendent of the school district.

It was shown in the proof that this contract was separately signed by the said officers, and the appellant cites the case of *Carry Library* v. *Bliss,* 7 L. R. A., 765, to the effect that the signatures of the majority of the board of directors separately obtained to a paper when the board is not in session will not constitute a valid act by the board. The appellant also cites the case of *Honaker* v. *Board of Education,* etc., reported in 32 L. R. A., p. 413, where it is held that the signatures to a contract separately obtained cannot bind a board.

It is sufficient to say that there can be no doubt of the prinicple laid down—namely, that the contract of September 26, although valid in form, was not by itself a contract of the School Board of Guayama. However, document No. 4, which is filed in the record under certificate of the secretary shows that the action of the school board on October 20, 1904, was as follows:

"It was agreed to approve the contract of lease of the house of Don Juan Lamboglia, situated on Jardines Street, corner of Hostos, for the industrial school at the monthly rental of $40."

The same certificate shows that Rodríguez, Venegas and Zimmerman, who individually signed the contract of September, were present at the meeting of October, and as we have said before, they were, respectively, secretary and president of the board, and the superintendent of schools.

In the case of the *Union School Furniture Co.* v. *School District No. 60,* reported in 20 L. R. A., 136, it was held that a school district which has received, retained and used for a long period of time school furniture, bought for it by members of the school district board acting separately without any board meeting must be deemed to have ratified the purchase and must pay for the property so obtained for its use; and the notes cite a number of cases which show that a school board may ratify an unauthorized contract.

*The Bank of Columbia* v. *Patterson,* 7 Cranch, 299, is a leading case from which it is deduced that the acts of the agents of a corporation may be ratified by the corporation itself. (See likewise Dilon's "Municipal Corporations," sec. 463. Also secs. 1277 and 1278 of the Civil Code.)

It therefore appears that the contract in suit, insofar as it was not *ultra vires,* became the contract of the school board by reason of its ratification. The house was also occupied by defendants for the purposes of the industrial school, and although the defendant maintains that it was not occupied by virtue of the contract of September, yet such occupation is another matter which tends to show the intention of the parties.

It is contended that the contract of September 26 was not sufficiently identified by the action of October, but reference was made to the complainant, to his house, and the street number, and to the amount of the rent, and this contention must fail.

The appellant contends then that the action of the board in April, 1905, was, in point of fact, a novation of the contract.

It is contended that the action of the board in renting the two houses was accepted by Lamboglia, as evidence by his

receiving a rental for both houses. However, this contention does not exclude the idea that he may have thought that the board by verbal act was taking the second house in addition. A novation must be by clear and mutual consent, and the mere acceptance of rent, without any express release, does not operate as such consent. Something more is needed to show that in taking the action of April the contract of September was borne in mind.

With respect to the question of rescission raised by the defendant, we think the evidence thereof is too meagre to set aside a written contract.

There was considerable proof to the effect that Lamboglia declared the contract rescinded, and that the board accepted his action. There was, however, no explanation of what contracts he was referring to. The subsequent acts, his refusal to accept the keys, and in addition, the fact that he proposed to recover damages, show a contrary intent. There is nothing to show that he consented or intended that his five-year contract should be superseded either by way of rescission or novation. He had everything to lose and nothing to gain by such an action, and a rescission must be evidenced by more definite acts than those on which the defendant bases his objections to the judgment of the court below.

The evidence besides is contradictory in this regard and in such case the court having decided against defendant we should not disturb such a finding in the absence of extraordinary circumstances which do not exist here. (*Gorgonio de Bolívar* v. *Sucesión de Eudaldo Iglesias,* opinión rendered December 12, 1906 (11 P. R. Rep., p. 422) ; *Tony Lowande* v. *Manuel A. García y Otero y Compañía,* opinion rendered May 3, 1907 (12 P. R. Rep., p. 290).)

We agree with counsel for the appellee that section 9 of the School Law does not affect the case. By its terms it applies to a meeting where there is necessity for raising revenue by taxation and like purposes. Assuming again that the

contract was within the power of the board, no such formality as section 9 prescribes was necessary.

We next come to consider the most important contention of appellant, namely, whether the contract was a valid one as being within the scope of the powers of the school board.

By section 3 of the School Law the "qualified voters of each municipality shall elect at each regular municipal election, three persons," etc. "The three directors thus elected shall be known as the 'school board,' and shall hold office two years from and after the 1st day of January next ensuing after their election, and until their successors have been elected and qualified." Section 7 provides:

"Section 7.—School boards shall have charge of all school buildings in their respective districts; they shall have the power to erect, repair, remodel and improve school property, rent buildings for school purposes, provide suitable furniture and equipment for the same, employ janitors for school buildings, repair and keep in order suitable outbuildings, pay house rent for teachers, and keep in order all school buildings in their respective districts. They shall have the custody of, and shall keep in repair all school buildings erected by the Insular Government, although the title to the same is vested in The People of Porto Rico, so long as said buildings are used for school purposes, and in general they shall perform such duties as the Commissioner of Education may require, in accordance with the School Laws."

Under section 4 it is evident that School Boards are *artificial* persons created by law, and they are elected in the same way as other municipal officers, and the most general principles applicable to municipal corporations govern such school boards. (*Whitney* v. *Stone,* 111 Mass:, 370.) Under section 7 they have very wide authority, and among other things they are given the power to rent buildings for school purposes. Then without any other limitation in the act, it would appear that the power to rent includes the right to rent a building for a reasonable period of time for school purposes.

The appellant, however, bases its chief reliance on section 21 of the School Law. Section 21, as amended when this con-

tract went into force, Laws of 1904, page 64, provides as follows:

"Section 2.—Section 21 of the Codified School Law shall read as follows: 'School boards shall pay all their obligations promptly and under no circumstances shall incur debts or obligations in excess of their receipts or not provided for in their budget. They shall, before the first day of August each year, make a statistical report of their transactions, financial and otherwise, and submit the same to the Commissioner of Education. Said report shall contain an exact statement of the receipts and expenses of the school board. The accounts of the school board and of the treasurer of the school shall be audited and otherwise treated as all accounts of the municipal offices. These accounts shall be kept in the account books prepared and furnished by the Commissioner of Education, and no money shall be expended until after the appropriate record of the transaction has been made in these books. These account books shall be sent to the Commissioner of Education for his examination and approval on or before the 20th day of July, October, January and April of each year, and shall be returned by the Commissioner of Education, through the superintendent of the district, within 10 days after their receipt.' "

Under section 63 as amended by the Act approved March 10, 1904, page 75 of the Laws of 1904, it is provided:

"Section 63.—That for the fiscal year beginning July 1, 1904, and ending June 30, 1905, and for every succeeding fiscal year, in order to increase the revenues of the respective school boards, the municipalities may levy a property tax to be known as 'school tax,' and not to exceed one-tenth of one percentum of the assessed value of all real property within the respective municipalities in accordance with the assessment made by the Treasurer of Porto Rico to levy and collect the insular property tax."

This act was again amended in 1905 to include personal property within the scope of the taxation. (Page 66, Laws of 1905.)

Sections similar to section 21 have been incorporated into either constitutions or the statutes of many of the States of the United States. They have been variously construed by the different courts. Sometimes it has been held that a con-

tract by which something is to be continuously done by one person, to be paid for in successive monthly instalments, or yearly instalments, by a municipal corporation, that the aggregate sum must be considered, and if the aggregate sum contracted for exceeds the municipal budget for any one year, such contract is beyond the powers of the board. Other authorities have held that where the object of the contract is for the purpose of obtaining gas or light or some regular and necessary commodity, for the use of the municipality, the obligation contracted should be considered only to apply to any one particular year, and if the amount to be paid out in that one year, or the amount already contracted for does not exceed the revenues for that year, then a contract of that kind might be upheld. And the decisions have also revolved about the point as to what contract would constitute an indebtedness within the terms of similar provisions, and it is most frequently held that where something remains to de done by the contractor, or the other party to the contract, that no debt arises on the part of the community until the service or the particular act to be performed by such other party has actually been done. In the case of *Walla Walla City* v. *Walla Walla Water Co.*, reported in 172 U. S., page 1, construing limitations of the character here referred to the Supreme Court of the United States says:

"There is a considerable conflict of authority respecting the proper construction of such limitations in municipal charters. There can be no doubt that if the city proposed to purchase outright, or establish a system of waterworks of its own, the section would apply, though bonds were issued therefor made payable in the future. (*Buchanan* v. *Litchfield*, 102 U. S., 278; *Culbertson* v. *Fulton*, 127 Illinois, 30; *Coulson* v. *Portland*, Deady, 481; *State* v. *Atlantic City*, 49 N. J., Law, 558; *Spilman* v. *Parkersburg*, 35 W. Va., 605; *Beard* v. *Hopkinsville*, 95 Kentucky, 239.) There are also a number of respectable authorities to the effect that the limitation covers a case where the city agrees to pay a certain sum per annum, if the aggregate amount payable under such agreement exceeds the amount limited by the charter. (*Niles Waterworks* v. *Niles*, 59 Michigan, 311; *Humphreys*

v. *Bayonne,* 55 N. J. Law, 241; *Salem Water Co.* v. *Salem,* 5 Oregon, 29.)

"But we think the weight of authority, as well as of reason, favors the more liberal construction that a municipal corporation may contract for a supply of water or gas or like necessary, and may stipulate for the payment of an annual rental for the gas or water furnished each year, notwithstanding the aggregate of its rentals during the life of the contract may exceed the amount of the indebtedness limited by the charter.   There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise.   There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by instalments.   In the one case the indebtedness is not created until the consideration has been furnished; in the other the debt is created at once, the time of payment being only postponed.

"In the case under consideration the annual rental did not become an indebtedness within the meaning of the charter until the water appropriate to that year had been furnished.   If the company had failed to furnish it, the rental would not have been payable at all, and while the original contract provided for the creation of an indebtedness, it was only upon condition that the company performed its own obligation.   *(Wood* v. *Partridge,* 11 Mass., 488, 493.)   A different construction might be disastrous to the interest of the city, since it is obviously debarred from purchasing or establishing a plant of its own, exceeding in value the limited amount, and is forced to contract with some company which is willing to incur the large expense necessary in erecting waterworks upon the faith of the city paying its annual rentals.   *(Smith* v. *Dedham,* 144 Mass., 177; *Crowder* v. *Sullivan,* 128 Ind., 486; *Saleno* v. *Neosho,* 127 Missouri, 627; *Valparaiso* v. *Gardener,* 97 Indiana, 1; *New Orleans Gas Light Co.* v. *New Orleans,* 42 La. Ann., 188; *Merrill Railway & Lighting Co.* v. *Merrill,* 80 Wis., 358: *Weston* v. *Syracuse,* 17 N. Y., 110; *East St. Louis* v. *East St. Louis Lighting Co.,* 98 Illinois, 415; *Grant* v. *Davenport,* 36 Iowa, 396; *Lott* v. *Waycross,* 84 Georgia, 681; *Burlington Water Co.* v. *Woodward,* 49 Iowa, 58.)

"In the case of *Wood* v. *Partridge,* cited by the Supreme Court, the Massachusetts court says as follows:

"A covenant to pay rent quarterly creates no debt or legal demand for the rent until the time stipulated for payment arrives.   The rent

may never become due. The lessee may quit the premises with the consent of the lessor; or he may assign over his term with such consent, so as to discharge himself from rent (notice that some of these contingencies are claimed by the defendant to have happened), or he may be evicted by a title paramount to that of his lessor, in either of which cases he will be discharged from the operation of his covenants.''

The case involves the question of whether, as Partridge, who was trustee for Wood, could have been made liable for any rent which had not become due at the time the writ was served upon him. The court said he could not, for beyond that time the rent was contingent.

Other cases are cited in the brief of appellant in the case of *Lamar Water & Electric Co.* v. *City of Lamar,* reported in 32 L. R. A., page 161, to the effect that a contract to pay for a commodity to be furnished or service to be performed is not a debt in the common and general acceptation of the word.

In *Electric Co.* v. *City of Dallas,* 23 Tex. Civ. Rep., page 327, the court says:

"The contract now under consideration being for rental of light for the use of the city, and payment therefor to be made only upon the performance of the service provided for, and the annual rental thereof not exceeding the amount the city council was legally authorized to collect and appropriate for each year, it did not create such debt as comes within the constitutional provision which inhibits the creation of a debt without, at the same time, making provision for its payment.''

This case also points out that the distinction between contracts of the character of the one in suit, and those creating a debt that requires making a provision for its payment at the time of its creation, is clearly drawn by the Supreme Court of the United States in the case of the *City of Walla Walla* v. *Water Co., supra.*

The Missouri Supreme Court in *Lamar Water & Electric Co.* v. *Lamar, supra,* in this regard says the following:

"On that point there is some conflict from precedents in other States. But the correct rule, we think, has been stated by Judge Dillon in his latest work on municipal corporations, thus:

"Under the constitutional provisions in Iowa, Illinois, Indiana and Pennsylvania, referred to, it is held that a corporation may make a contract (at least for necessaries), covering a series of years, upon which an obligation to pay may arise from year to year as the thing contracted for is furnished; and in such case, the whole amount which may ultimately become due does not constitute a debt within the constitutional prohibition. But in order to ascertain whether the corporation by such contract is transgressing the limit, regard is had only to the amount which may fall due within a certain year or other period; and if the revenues for that year or other period are sufficient, over and above the payment of the other expenses, to pay such amount, there is no debt incurred within the constitutional prohibition."

In 59 L. R. A. two cases in this connection are reported and a list of authorities set out on page 610 as to what is not an indebtedness. (*McGillivray* v. *Joint School District No. 1,* 58 L. R. A., p. 100, is also a case in point.)

It is evident then that a contract extending for a term of years to supply water, gas and the like may be supported and so may a contract to rent a school building. It is contended here, however, that a school board has no power to make a contract binding on its successors and the appellant cites two cases to support its contention. In the case of *Henaker* v. *The Board of Education, etc.,* 32 L. R. A., page 413, the contract was for the purchase of certain appliances, half of the amount due to be paid for during the then current year and half in the subsequent year which was held to be forbidden by the Code of West Virginia, a distinct debt being created. It was not shown that the appliances were necessary and the case involved an element of fraud. *Millikin* v. *Edgar County,* 18 L. R. A., 447, is authority to the effect that a board of

supervisors elected for one year has no right under the statute in Illinois to tie up the hands of its successors by appointing a keeper of a poorhouse for the term of three years. That municipal corporations may make contracts binding on their successors is necessarily involved in the case of the *Walla Walla Water Co., supra,* as well as in the other cases cited in the same connection.

The United States Circuit Court of Appeals of the Eighth Circuit, had occasion to pass upon this question in the case of *Illinois Trust & Savings Bank* v. *Arkansas City,* reported in 34 L. R. A., at page 518, and the court on page 524 says:

"But it is insisted that this contract is beyond the powers of this city, and void, because it grants the right to use the streets of the city to the water company, and promises to pay rental for the hydrants for 21 years. The proposition on which this contention rests is that the members of the city council are trustees for the public; that they exercise legislative powers; and that they can make no grant and conclude no contract which will bind the city beyond the terms of their offices, because such action would circumscribe the legislative powers of their successors, and deprive them of the right to their unrestricted exercise as the exigencies of the times might demand. There are two reasons why this proposition cannot be successfully maintained in this case:

"First, it ignores the settled distinction between governmental, or public, and the proprietary, or business, powers of a municipality, and erroneously seeks to apply to the exercise of the latter a rule which is only applicable to the exercises of the former. A city has two classes of power—the one legislative, public, governmental in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi-private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by the rule here invoked. In their exercise it is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be

governed by the same rules that govern a private individual or corporation. (Dill. Mun. Corp., 3d Ed., sec. 66, and cases cited in the note.) In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens.'' (1 Dill. Mun. Corp., sec. 27; *Cincinnali* v. *Cameron,* 33 Ohio St., 336, 367; *Safety Insulated Wire & C. Co.* v. *Ballimore, supra,* and cases cited under it.)

The case of *McBean* v. *Freano*, 31 L. R. A. Cal., 794, is also in point. The cases all depend upon the particular statute invoked and the character of the contract. Where the particular contract is not for a necessary thing, or where the term is unreasonably long, considering the nature of the corporation, or when any fraud attaches, such contract will not be sustained.

During the trial in the district court, Mr. John Zimmerman, a witness for the defendant, testified that before making the contract the only building in Guayama available for an industrial school was the house of Sr. Lamboglia. To protect themselves in this regard the board stipulated in the contract that if an industrial school building should be put up by the Commissioner of Education the contract should be considered rescinded and the provision was also made in the contract which permitted the board to make changes in the building for industrial school purposes. Under the circumstances we must hold that the rental of a building by a school board in a city of the size of Guayama for the term of five years, was not an unreasonable exercise of its powers.

The record in this case presents the facts in a very unsatisfactory way. There is a bill of exceptions in the files but that is made to include the notes of the stenographer and all the documents presented at the trial. The judge might as well have signed and approved the stenographer's notes. There ought to be presented either a statement of the case in narrative form, or a bill of exceptions with the evidence in narrative form. We have had occasion to comment on

these matters in the cases of *Euripides López* v. *The American Railroad Co.*, decided on the 28th day of June, 1906, and the *Sucesión of Eudaldo Iglesias* v. *Gorgonio de Bolívar,* decided on the 20th day of December, 1906.

For the reasons before given the action of the district court in giving a judgment in favor of the complainant and dimissing the cross complaint, is affirmed.

*Affirmed.*

Chief Jsutice Quiñones and Justices Hernández, Figueras and MacLeary concurred.