THE PEOPLE ex rel. MARY A. SCHANCK, Executrix, etc., Appellant, v. ANDREW H. GREEN, Comptroller, etc., Respondent.

THE PEOPLE ex rel. THE NEW YORK DISPENSARY, Appellant, v. ANDREW H. GREEN, Comptroller, etc., Respondent.

Under the charter of the city of New York of 1873 (chap. 335, Laws of 1873) the common council have authority to take leases of real estate for the benefit of the city, and to determine what property shall be leased, and for what period, subject to the limitations and restrictions of said charter.

This authority is not limited to the taking of such leases as are provided for by appropriations. The provision of said charter prohibiting the incurring of expenses not thus provided for (§ 89), has reference to the expenditures of the several departments, not to the action of the common council in leasing property deemed by it to be required for city purposes.

In a return to a writ of alternative mandamus directed to the comptroller requiring him to lease from relators certain premises as authorized and directed by the common council, or to show cause, etc., the comptroller alleged, in substance, that there was no sufficient appropriation to pay the rent. *Held*, that he was estopped from claiming that it was not his duty to execute the lease, and that the common council had no authority

to require him to do so, as he had not based his refusal or his defence to the writ upon that ground.

*It seems*, however, that the common council has power to authorize and to require the comptroller to supervise the taking of a lease and to execute it on behalf of the city.

The provision of said charter (§ 15), making the signature of the clerk of the common council necessary to all leases, etc., refers only to leases from the city corporation, and does not include those to it.

*People ex rel.* v. *Green* (6 Hun, 11) reversed.

(Argued March 28, 1876; decided April 4, 1876.)

THESE were appeals from orders of the General Term of the Supreme Court in the first judicial department. (Reported below, 6 Hun, 11.)

The order in the case first entitled reversed an order of Special Term quashing defendant's return to an alternative writ of mandamus, and directing a peremptory writ to issue.

In the case secondly entitled the order reversed an order of Special Term sustaining a demurrer to defendant's return to an alternative writ, and directing a peremptory writ to issue.

The writ in each case required the comptroller, on behalf of the city, to lease certain premises therein described upon the terms and conditions and for the term specified in certain resolutions of the common council of the city, duly adopted and approved, which authorized and directed such leasing.

The return in each case alleged, in substance, that the appropriation for the payment of rents for the year was insufficient after the payment of rents upon leases already taken to pay the rent of the property in question.

*A. C. Brown* for the relators. The common council had power to devolve upon the comptroller the duty of taking leases. (*People* v. *Wood*, 4 Park., 147; *People* v. *Connolly*, 2 Abb. [N. S.], 321; *In re Lowber*, 7 Abb., 158.)

*T. B. Clarkson* for the respondent. The common council could not devolve on the comptroller or confer on him the power to execute such leases. (Laws 1873, chap. 335, pp.

486, 492–495, §§ 2–18, 29–35.)   The common council had no power to accept or execute, or to authorize the acceptance or execution by the city as lessee of a lease for a longer term than the current financial year.   (Laws 1873, chap. 335, pp. 517, 518, 486, 487, 491, 508; Laws 1873, chap. 757, § 20, p. 1126.)

MILLER, J.   The authority of the common council of the city of New York to take a lease of real estate for the benefit of the corporation, although not conferred in express terms, is distinctly recognized as one of the inherent powers possessed by that body, under the charter of the city.   Section 14, Session Laws of 1873, chapter 335, declares that in case of any ordinance or resolution of the common council, which involves the lease of real estate or franchise, the votes of three-fourths of the members of the board shall become necessary to its passage.   Section 18 enacts that the common council shall have no power to take or make a lease of any real estate or franchise, save at a reasonable rent, and for a period not exceeding five years, unless specially authorized so to do by an act of the legislature.

From these provisions alone the conclusion is inevitable that the common council, in the exercise of its legislative powers, is vested with full authority to decide, subject to the mayor's approval as the charter requires, what property shall be leased for public purposes and for what period, not exceeding the time provided by law.   As will hereafter be manifest, there are no other provisions of the charter which are in conflict with those already cited, or which in any way prevent a compliance with the requirements of the same.

Assuming, then, that the common council have authority to take leases, it necessarily follows as a legal conclusion that they possess ample power, as that duty could not be conveniently performed by that body as such, to authorize some person in office to supervise the taking of a lease and to see that such instrument contains the proper covenants and conditions, and the evidence of the obligations which the parties

assume to perform, as well as to direct who shall execute the same, unless such duty by law devolves upon some other officer of the corporation. The resolution in each of the cases now considered was evidently intended to select the comptroller as a proper officer to supervise the leasing of the property therein mentioned, and not merely to direct the formal execution of the leases which were authorized. Although the charter contains no provision that the comptroller shall perform that business, it does not prohibit it, and as he is the head of a department whose especial duty it is to look after and protect the financial interests of the city, it would appear to be eminently appropriate that this officer should be designated for such a purpose. It is then clearly within the power of the common council, in the discharge of its legislative functions, to impose upon one of the officers of the city government a duty which requires the exercise of intelligence, sound judgment and discretion, as to the terms and conditions of agreements of this character, which to a considerable extent must be governed by the wants of the city, the nature of the property leased and the uses to which it is to be appropriated, and in this respect they have not exceeded their authority.

The right to exercise such power is also sanctioned by section 90 of the charter, which authorizes the common council to make provisions and regulations other than those specially authorized in the charter for the organization, perfecting and carrying out the powers and duties therein prescribed in any department. Under this provision the duty might be imposed by ordinance, and a resolution to the same effect stands upon a similar footing.

As the common council had a clear right to direct the comptroller to lease the property, and by the resolutions they intended, manifestly, to include the execution of the leases, no sufficient reason is shown why these instruments should not be carried into effect. The affixing of a signature or of a seal, or both, to an instrument of this kind involves the performance of a mere clerical act, and where a lease is accepted

1876.]  People ex rel. Schanck v. Green.  503

Opinion of the Court, per Miller, J.

and taken by the lessee, and benefits received thereby, it is obligatory and valid without even the signature of the lessee. The act of acceptance of the demise of itself would render the lessee liable for the payment of the rent, and hence it by no means follows that the resolution of the common council may not be made effective, even although the instrument is not formally signed.

It is claimed, however, that the duty of executing leases on behalf of the city must be performed by the clerk of the common council, in pursuance of section 15, which enacts, that "he shall keep the seal of the city, and his signature shall be necessary to all leases, grants and other documents, as under existing laws." This provision is evidently confined to the instruments or documents named which were required to be signed by the clerk, and which included leases and grants from the city which were authorized by law, and as there are no "existing laws" which require the clerk's signature or the seal of the corporation to a lease *to* the city, it is not plain how the clerk's signature is necessary to the leases in question. Moreover, even if such was not the case, it is a complete and full answer to this objection that the comptroller, in his return to the writ of mandamus in each of those cases, does not place his defence upon the statute cited. He did not refuse to perform the duty imposed upon him for any such reason, and he claims no exemption, personally or officially, except upon the broad ground, that, according to the provisions of the charter, no appropriation has been made for the payment of rent under these leases, and* hence the resolutions were unauthorized. Had he refused originally because he was not a proper officer to execute the leases, the objection might have been obviated, perhaps, by further action of the common council. As he did not decline for that reason, we think he is estopped from raising that question in this stage of the case, and that the point made is not now properly before us for our consideration. It may also be remarked that if this objection had any force, the order of the Special Term might have been modified so as to require the

504      People ex rel. Schanck *v.* Green.      [April,

Opinion of the Court, per Miller, J. ·

comptroller to accept the leases on behalf of the city, and by leaving it for the common council to direct that the clerk, or some other officer to be designated, should sign and seal them.

It is further insisted that the duty imposed upon the comptroller by section 29 of the charter is inconsistent and irreconcilable with the practice of executing leases on the behalf of the city. The answer to this position is, that it is evident from the phraseology employed that the section cited does not embrace leases to the city, but applies to contracts for work and supplies, which must be made by some officer and necessarily be in writing. It could not even apply to an oral lease for a year, and would be in direct conflict with the right of the city authorities to take a lease for any longer period of time, and thus, as we have seen, be inconsistent with the provisions of the charter. In support of the views expressed, it may be observed that the power of the common council to authorize and direct the comptroller to take leases on behalf of the city has been held to exist under the charter of 1857, which contained the same provision as to the custody of the seal and the duty of the clerk as the present charter. (See *People* v. *Wood*, 4 Park., 147; *People* v. *Connolly*, 2 Abb. [N. S.], 321; *In re Lowber*, 7 Abb., 158.) These decisions are by no means controlling, but show the existence of a practice which has long been tolerated, and which is also shown by the return to the mandamus in each of the cases now considered.

The objection that the common council had no power to authorize the leases in question without some provision for the expenses of the same, is also without force. Section 89 of the charter prohibits the incurring of any expense by any department, ward or officers of the city government, unless an appropriation shall have been previously made covering the expense. Section 112 requires that the board of estimate and apportionment shall annually make a provisional estimate of the amounts required to pay expenses of conducting the public business of the city for the next ensuing financial

year, and that, after this is signed, the several sums shall become appropriated, and declares that no department or officer shall incur any expense in excess of the sum appropri ated. These enactments have reference to the expenditures of the several departments and to appropriations made by them, and not to the action of the common council in taking a lease, as authorized by law. The common council constitutes the legislative power of the city government, and the charter does not in any way limit its action merely to the taking of such leases as may be provided for by the board of estimate and apportionment. As the right to take a lease for five years is beyond dispute, it cannot be controlled or taken away by reason of a failure to make an appropriation. If the common council was thus confined in the exercise of its lawful authority in accepting a lease, the legislative power in this respect would be vested in the board of estimate and apportionment and become subordinate to the finance department. The eighteenth section of the charter (*supra*) would also become nullified, and no lease could be authorized which was required by the public necessities, and which involved the expenditure of money, for more than a single year, as no appropriation could be made by the board of estimate and apportionment beyond this period. Even a lease commencing in a future year would be unauthorized.

Obviously, such could not have been the intention of the legislature, and is not a rational interpretation of the provisions of the charter cited. It was never designed that the appropriations of the board of estimate and apportionment should control legislative action which the charter warranted. This is also apparent from section 2 of chapter 308, Laws of 1874, which anticipates an insufficient appropriation, and that expenditures may exceed the appropriation; and makes provision for a transfer of an excess of the amount required or deemed to be necessary for the purposes or objects thereof, to such other purposes or objects for which the appropriations are insufficient, or as may be required; or if a balance remains unexpended at the end of the fiscal year, then the

application of the same for the like purposes in the next suc-
ceeding year.

The common council has, no doubt, ample power in its
legislative capacity, to lease property for the benefit of the
city, as may be required for the use of the corporation which
they represent; and there is no valid ground for claiming
that before they can authorize a lease of five years to be
taken, an appropriation must be made for that purpose, and
that the board of estimate and apportionment must thus, in
advance, sanction the act. The payment of the obligation
incurred is a subject for consideration afterwards, and the
question of appropriation for the payment of rent, after a
lease has been made, is entirely different from the question
arising as to the power to make such lease. It is not pre-
sented in these cases, but more properly would arise when
payment of the rent is demanded. It will be time enough
then to urge that there is no fund out of which payment can
be lawfully made. The question is not whether the comp-
troller shall pay, but whether the common council has author-
ity to exercise the legislative powers conferred by the charter
for leasing property for city purposes. Regarding the sub-
ject in the point of view discussed, there is no conflict in the
charter nor any want of harmony in its various provisions.

As no sufficient reasons are given in answer to the manda-
mus in either of the cases considered, the result must be
that the orders of the General Term should be reversed, and
those of the Special Term affirmed, with costs.

All concur.

Ordered accordingly.