OPINION OF THE COURT
Jerome F. Hanifin, J.
This is a motion by the State of New York for summary judgment, pursuant to CPLR 3212, brought on by order to show cause.
This claim arises out of an alleged lease made between the *901 landlord, Investors Funding Corporation of New York, as agents for Salina Onondaga Company and the New York State Joint Legislative Committee on Reapportionment (hereinafter called the committee), Hyman M. Miller, chairman. The lease was to run from January 1, 1974, through December 31, 1975, and called for an annual rent of $10,537.50 payable in monthly installments of $878.13. This claim is for alleged nonpayment of rent due pursuant to the afore-mentioned written lease. According to the claimant, "The State of New York and The Joint Legislative Committee on Reapportionment have failed and refused to pay its rental installments which were due for the months of May through December, 1975”. Total rents due are alleged to be $7,025.04, representing eight months.
The claimant, James Bloor, was appointed reorganization trustee of Investors Funding Corporation of New York pursuant to chapter 10 of the Bankruptcy Act (US Code, tit 11, § 501 et seq.) by order of the United States District Court for the Southern District of New York, dated November 1, 1974, and was thereby vested with title to all property and choses in action of the bankrupt (US Code, tit 11, §§ 110, 502).
The claim originally filed early in 1976, was set for trial in Syracuse, New York, on February 17, 1978. On the eve of trial, the defendant, by this order to show cause, moved for summary judgment. The defendant set forth eight separate grounds, any of which, or all of which, it alleges, are sufficient to bar this claim as a matter of law.
The defenses are: (1) The lease was never submitted to the State Comptroller pursuant to section 112 of the State Finance Law and is thus unenforceable as a matter of law; (2) the lease was automatically canceled upon discontinuance of funding for the committee on March 31, 1975, pursuant to section 161-a of the State Finance Law; (3) the committee did not have the power or authority to enter into a lease or bind the State to the terms thereof; (4) the bankrupt failed to notify the State of bankruptcy proceedings; (5) the claimant failed to properly mitigate damages; (6) the lease was not properly executed; (7) the agent who executed the lease did so without authority; (8) the committee could not make funds available for leasing purposes until it secured appropriate approval under section 49 of the State Finance Law.
The State’s submitted affidavits and exhibits address only the sufficiency of the lease under State Finance Law, the *902 State’s liability on the lease where funding has ceased, and the Committee’s power generally to bind the State.
The claimant has answered all of the defendant’s defenses, and has submitted exhibits and affidavits trying to pinpoint what he feels to have been the source of the committee’s authority.
The only issues in genuine conflict are the applicability of the State Finance Law, and the authority of the committee to bind the State to the lease. Nevertheless, the court will first address the State’s other defenses.
The court finds that the claimant, as trustee in bankruptcy for Investors Funding Corporation of New York, owed the defendant no duty of notification of bankruptcy proceeding (cf. US Code, tit 11, §§ 94, 502, 561). The defendant had no absolute right to participate in any hearings relative to that bankruptcy.
The court finds that the bankrupt made a good faith effort to mitigate damages. Moreover, the long-standing rule in New York is that a landlord is under no duty to mitigate damages which result from a tenant’s abandonment of the leased property (Sancourt Realty Corp. v Dowling, 220 App Div 660; Birchwood Assn. v Stern, 86 Misc 2d 607, affd 88 Misc 2d 937; 34 NY Jur, Landlord and Tenant, §§ 313-314). The State has presented no proof to contradict the claimant’s affidavit.
The court concludes that the subject lease was properly executed and that the individual who executed the subject lease did so within his proper authority. Other than its bare allegations, the State has offered no evidence to raise a triable issue of fact in this connection. Moreover, the defendant may not raise the authority of the lessee’s agent in order to avoid liability under the lease (cf. Fiorito v Yaskulski, 16 AD2d 867). The lessee is not "the party to be charged” (General Obligations Law, § 5-703, subd 2).
The court will now turn to the applicability of sections 49, 112 and 161-a of the State Finance Law to the transaction and the committee’s authority generally to enter into this lease.
Section 49 of the State Finance Law provides: "When, in any act, lump sum appropriations are made for personal service, or for maintenance and operation or for non-personal service, or for maintenance undistributed including personal service, other than such appropriations for the legislature or *903 judiciary, no moneys so appropriated shall be available for payments for personal service, or maintenance and operation or for non-personal service, or maintenance undistributed including personal service until a schedule of positions and salaries and the amounts to be available for other personal service classes of expenditure and for the expenses of maintenance and operation or for non-personal service shall have been approved by the director of the budget, and a certificate of such approval filed with the chairman of the senate finance committee and the chairman of the assembly ways and means committee and the state comptroller. Any such approved schedule may be amended, however, with the approval of the director of the budget and the filing of a certificate thereof with such officers above named.” (Emphasis added.)
Subdivision 2 of section 112 of the State Finance Law provides in part: "Before any contract made for or by any state department, board, officer, commission, or institution, shall be executed or become effective, when such contract exceeds one thousand dollars in amount * * * it shall first be approved by the comptroller and filed in his office.” (Emphasis added.)
Subdivision 2 of section 161-a of the State Finance Law provides: "The commissioner of general services is authorized to: * * * 2. Lease from time to time buildings, rooms or premises in the county of Albany, and elsewhere as required, for providing space for departments, commissions, boards and officers of the state government, upon such terms and conditions as he deems most advantageous to the state. Any such lease shall, however, be for a term not exceeding five years, but may provide for optional renewals on the part of the state, for terms of five years or less. Each such lease shall contain a clause that the contract of the state thereunder shall be deemed executory only to the extent of the moneys available and no liability shall be incurred by the state beyond the money available for the purpose.” (Emphasis added.)
Section 49 of the State Finance Law by its terms, is not applicable to appropriations made for legislative use. The sufficiency of this claim may, therefore, not be attacked on the basis of this section.
Both subdivision 2 of section 112 and subdivision 2 of section 161-a of the State Finance Law are applicable only to State departments, officers, commissions or institutions. Clearly, the Legislature or investigatory committees created *904 by the Legislature, are neither departments, boards, officers, commissions or institutions (cf. Matter of Plumbing; Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, wherein it was held that the State Thruway Authority was not a "board” or "department” within the meaning of the State Finance Law, § 135).
The above statutes contain no mention of legislative bodies[1] and the court concludes that any interpretation of the statutes to include the Legislature would produce untenable results, in particular, making the actions of the Legislature, and its committees, subject to the prior approval of the executive and Comptroller. If all leases or contracts created by the Legislature, or its committees, were subject to the prior approval of the Comptroller, the legislative power in this respect would be subject to the control of the Comptroller. In other words, the Legislature’s power would become subordinate to the Finance Department of the State of New York (cf. People ex rel. Schanck v Green, 64 NY 499, 505).
The Senate and the Assembly of the State of New York are the legislative bodies of this State and are vested with power pursuant to article III of the New York State Constitution. Implicit in the power to legislate, is the power to appoint committees to investigate any matters relating to property, affairs, or government of the State and to incur any expenses necessary, and incidental to that investigation (Barry v City of New York, 175 Misc 712, affd 261 App Div 957, mot for lv to app den 261 App Div 1073; Legislative Law, §63). This in itself implies the power to lease property, unhindered by Comptroller approval.
It is also noteworthy that the Legislature, pursuant to section 3 of article V of the Constitution "may from time to time assign by law new powers and functions to departments, officers, boards, commissions or executive offices of the governor, and increase, modify or diminish their powers and functions.” (Emphasis added.) The terms used in this section of the Constitution, which parallel the terms used in sections 112 and 161-a of the State Finance Law imply that the "legisla *905 ture” and "departments, officers, boards, commissions or executive officers of the governor” are mutually exclusive bodies.[2]
Although the chairman of the Joint Legislative Committee on Reapportionment was at the time of leasing a "State officer” (Public Officers Law, § 2), this fact does not bring the alleged lease into the ambit of sections 112 and 161-a of the State Finance Law. The leases were executed on behalf of the Senate and Assembly, through the committee. The Legislature was the contracting party, not Mr. Miller in his personal capacity.
It is therefore the conclusion of this court that sections 49, 112 and 161-a of the State Finance Law, by their own terms, and when read in light of the doctrine of separation of powers, cannot be interpreted as requiring prior Comptroller approval of contracts and leases made by the Legislature and its committees. Therefore, to the extent that the defendant moves for summary judgment on the basis of these sections, its motion is without merit.
Summary judgment may not be granted to the defendant based on any of the afore-mentioned grounds.
 The Select Committee on Reapportionment had both the power to contract, and incur expenses pursuant to section 63 of the Legislative Law and legislative resolution.[3] Mr. Miller, as chairman of the committee, was the appropriate party to bind the committee to the terms of this lease. Section 63 of the Legislative Law provides: "Whenever by resolution of either house, a committee or joint committee duly appointed pursuant thereto shall be directed to conduct an investigation or take testimony, the comptroller shall draw his warrant for the payment of the actual and necessary expenses of the committee or subcommittee having in charge such investigation, inquiry or taking of testimony, and of the officers and employees authorized to accompany them, upon the rendition of an itemized bill of such expenses certified by the chairman of the committee, and approved by the, temporary president of the senate in the case of a senate committee, or the speaker of the assembly in the case of an assembly *906 committee, or by both such officers in the case of a joint committee, or by his or their designee or designees, respectively, and upon proof by affidavit or otherwise that the same is due.” (Emphasis added.) Pursuant to section 63 of the Legislative Law, and the terms of the lease, the chairman of the committee, as well as the appropriate officials, approved claimant’s expense vouchers for 16 months.[4] On this basis, the legislative officials implicitly recognized that these were "actual” and "necessary” expenses of the committee. The Legislature’s performance under the lease represents a ratification and adoption of the terms thereof.
The questions remain, however: (1) Whether the court should read into section 63 of the Legislative Law ah executory clause such as the one explicitly set forth in section 161-a of the State Finance Law; (2) whether actual and necessary expenses should be interpreted to mean only those expenses for which funding is ultimately made available. The court concludes that no executory clause existed by implication; there is no reason why the Legislature would not have set one forth, either specifically in this lease, or generally by statute, if it intended that result. The court further concludes that actual and necessary expenses imply the ability to contract for „ reasonable periods of time. Section 63 of the Legislative Law represents an administrative procedure for payment, and a grant of authority to the committee only. Unlike sections 112 and 161-a of the State Finance Law, it does not deal directly with the formation of contracts or duties of the parties except to the extent that it mandates the State to pay for the committees’ expenses. A contract will not be construed so as to render it oppressive or inequitable as to either party, or as to place one of the parties at the mercy of the other, unless it is clear that such was their intention as of the time the agreement was made (Campbell v State of New York, 240 App Div 304, 309).
Pursuant to section 63 of the Legislative Law, the lessee, to secure payment, had only to submit "an itemized bill of * * * expenses” to the Legislature for certification by the committee chairman and approval by the Temporary President of the Senate, the Speaker of the Assembly or their designees. Claimant’s uncontradicted affidavit stated that such bills were tendered to the Legislature for unpaid rentals. Claimant has *907 therefore shown to this court the existence of a valid lease with the committee and proper presentation of rental bills for payment thereunder. The State, on the other hand, has come forward with no proof by affidavit or otherwise which would negate its normal contractual liability under the lease, as might exist between two individuals, or that it has any real defense to this claim (Alexander Land Corp. v Rochester Reducing Corp., 31 Misc 2d 66). Claimant is therefore entitled to summary judgment in this action, as no material or triable issues of fact remain (CPLR 3212, subd [b]; Vern Norton, Inc. v State of New York, 27 AD2d 13; Flynn v State of New York, 53 Misc 2d 929).
Pursuant to paragraph 18 of the lease, the claimant had the-right to enter and relet the vacated premises. The defaulting tenant would thereafter be liable for the difference between the rent received from the new tenant and the rent due under the remainder of the lease. As such, the claimant’s damages were not completely ascertainable until the final day of the lease term, December 31, 1975 (Hermitage Co. v Levine, 248 NY 333). The court finds that claimant is entitled to interest from that day until the entry of judgment (Court of Claims Act, § 19; CPLR 5001).
Therefore, upon the foregoing papers, the arguments of counsel and upon due deliberations, it is ordered, that summary judgment be and hereby is granted in favor of the claimant; and it is further ordered, that claimant is entitled to judgment in the amount of $7,025.04, with interest thereon from December 31, 1975, to the entry of judgment.

. Subdivision 1 of section 161-a of the State Finance Law, which deals with the Commissioner of General Services’ authorization to allot space in public buildings does cover the Legislature as well as departments, commissions, boards and officers of the State. It is noteworthy that subdivision 2, dealing with leasing, omits any reference to the Legislature.

. See, also, section 30 of the Legislative Law stating that the ways and means committee "shall have access at all reasonable times to offices of state departments, commissions, boards, bureaus and offices” (emphasis added).

. See A Con Res 208 (1966); A Con Res 201 (1967); A Con Res 161 (1968); A Con Res 166 (1969); A Con Res 175 (1970); A Con Res 170 (1971); A Con Res 169 (1972); A Con Res 163 (1973); A Con Res 95 (1974).

. This includes one month after funding to the committee allegedly ended.