Mary Lighton, Respondent, *v.* The City of Syracuse, Appellant.

Contract — Conditional upon Action by the Legislature — Specific Performance. A contract for the purchase of real estate executed by the city of Syracuse in conformity with a resolution adopted by the common council, providing for the payment of a portion of the purchase price on a date specified, "the balance to be paid for in such manner as the city is authorized by an act of the legislature to be passed at the legislative session commencing January 1, 1900," cannot be specifically enforced and the city compelled to accept the deed where no payment was ever made upon the contract, and no act authorizing the payment by the city of the purchase price or any part thereof has been passed by the legislature, since the provision for payment is not absolute, but conditional, depending upon future action by the legislature, and such action must be regarded as a condition precedent to any obligation on the part of the city.

*Lighton* v. *City of Syracuse,* 112 App. Div. 589, reversed.

(Argued May 1, 1907; decided May 28, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 22, 1906, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter W. Magee, Corporation Counsel (Charles V. Byrne* of counsel), for appellant. The court had no power to decree specific performance of the contract, because the municipality had never made any appropriation to meet the obligations thereof; and never had any fund out of which payment could be legally made; and consequently, under the express provisions of the city's charter, the contract cannot be specifically enforced. (*Smith* v. *City of Newburgh,* 77 N. Y. 136; *Wells* v. *Town of Salina,* 119 N. Y. 280; *A. R. M. Co.* v. *Town of Bridgewater,* 185 N. Y. 1; *Duschnes* v. *Heyman,* 2 App. Div. 354; 158 N. Y. 735; *Brumme* v. *Herod,* 38

App. Div. 558; *Cartledge* v. *West*, 2 Den. 377; *People ex rel. Cooke* v. *Wood*, 71 N. Y. 371; *Callahan* v. *Mayor, etc.*, 6 Daly, 230; *Nelson* v. *Mayor, etc.*, 63 N. Y. 538; *People ex rel. Schenck* v. *Green*, 64 N. Y. 499.) The contract in question is illegal and cannot be enforced. (L. 1895, ch. 822, § 19; *Ziegler* v. *Chapin*, 126 N. Y. 343.)

*Walter Welch* and *James E. Newell* for respondent. The judgment in the mandamus proceeding to compel the mayor and the city clerk to execute the contract for the purchase of the plaintiff's real estate conclusively determined that said contract was in proper form and duly authorized and duly executed by the plaintiff, and that it was the duty of the said mayor and city clerk to execute the same on behalf of the defendant herein, and that said contract was free from fraud, was in all respects valid and that the common council of the defendant had authority to purchase said real estate in the manner provided and to direct said contract to be made, and the defendant herein is estopped by said judgment in the mandamus proceeding from raising any of said issues in this action. (*Ashton* v. *City of Rochester*, 133 N. Y. 187; *Castle* v. *Noyes*, 14 N. Y. 329; *N. P. Bank* v. *Whitman*, 7 N. Y. S. R. 456; *Matter of B. W. & N. R. R. Co.*, 19 Hun, 314; 81 N. Y. 69; *Carleton* v. *Lombard*, 149 N. Y. 137; *People ex rel. McCabe* v. *Matthias*, 179 N. Y. 242; *Culross* v. *Gibbons*, 130 N. Y. 447; *U. S.* v. *City of New Orleans*, 98 U. S. 381; *Ralls County Court* v. *U. S.*, 105 U. S. 733; *Weston* v. *City of Syracuse*, 17 N. Y. 110.) The contract for the purchase of the plaintiff's real estate is valid and was not dependent for its validity upon the passage of any legislative act. Independent of the conclusive effect of the judgment in the mandamus proceeding it is submitted that the passage of an act by the legislature in the year 1900 was not a condition precedent to the contract but was intended to affect simply the time and method of payment. (*De Wolf* v. *French*, 51 Me. 420; *Nunez* v. *Doutel*, 86 U. S. 161; *Lee* v. *Decker*, 6 Abb. Pr. [N. S.] 392; *Sears* v. *Wright*, 24 Me. 278; *Crocker* v.

*Holmes*, 65 Me. 195; *Capron* v. *Capron*, 44 Vt. 410; *Cota* v. *Buck*, 7 Metc. 588; *Randall* v. *Johnson*, 59 Miss. 317; *Upson* v. *Holmes*, 51 Conn. 500; *Genet* v. *D. & H. C. Co.*, 96 N. Y. Supp. 406.)

VANN, J. This action was brought to compel the city of Syracuse to specifically perform a contract for the purchase of land from the plaintiffs. The contract had a peculiar origin. On the 27th of November, 1899, the common council adopted the following resolution: " *Resolved*, that the mayor and clerk be and they hereby are authorized and directed to enter into contract with Mary Lighton and Martha T. Lighton for the purchase of the real estate situate on the southwest corner of East Water street and Montgomery street; the same being twenty-five feet front on East Water street, the same in rear, and seventy-five feet front on Montgomery street; at the sum of $21,000, free and clear of all incumbrances; five thousand dollars to be paid over before January 12th, 1900; the title of which to be approved of by the corporation counsel, and the same to be paid for in such manner as the city is authorized by an act of the legislature to be passed at the legislative session commencing January 1st, 1900, and for that purpose the senator and members of assembly of Onondaga county are requested to procure the passage of such an act." There were thirteen votes in favor of said resolution and two against it, four of the aldermen being absent. On the 26th of December, 1899, Mayor McGuire returned said resolution without his approval, but on the same day the common council readopted it notwithstanding the objections of the mayor, fifteen aldermen voting therefor and three voting against it, with one absentee.

This action was taken by the common council under the revised charter of the city which was then in force and only five days before the White charter, which became a law in 1898, was to go into effect and a new common council was to assume control. (L. 1895, ch. 822; L. 1898, ch. 182.) The contingent fund, which alone was available for the purchase

of land by the city, was overdrawn to the extent of $137,569.90 when said resolution was adopted and according to the revised charter every alderman voting to contract a debt when there was no fund available to pay it was not only liable to a penalty but was also liable for the debt itself, while the city was expressly exempted from all liability therefor. (L. 1895, ch. 822, § 229; L. 1901, ch. 402.)

On the 6th of February, 1900, the plaintiffs signed and acknowledged a proposed contract, purporting to be drawn pursuant to the terms of said resolution, with a covenant on the part of the city to purchase the premises for the sum of $21,000 and to pay for the same as follows: "Five thousand dollars to be paid over before January 12th, 1900; the balance to be paid for in such manner as the city is authorized by an act of the legislature to be passed at the legislative session commencing January 1st, 1900." The mayor and clerk refused to sign this contract in behalf of the city, and the plaintiffs, as relators, commenced a proceeding in the Supreme Court to compel them to execute and deliver it. After some delay caused by the dismissal of the first proceeding an alternative writ of mandamus was issued commanding the mayor and clerk to execute the contract or show cause why the command of the writ should not be obeyed, and that they make return within twenty days. A return was made accordingly setting forth various reasons why a peremptory writ of mandamus should not be issued, such as fraud, excessive price and the like, but not including the conditional nature of the contract. The matter was referred to a referee, who decided that a peremptory writ should be issued, and on the 25th of April, 1903, the Special Term confirmed substantially all the findings made by the referee and issued the writ accordingly, addressed to Mayor Kline, who had in the meantime succeeded Mayor McGuire, as well as to the new city clerk. No appeal was taken from said order, and, acting under the compulsion of the writ, the mayor and clerk, on the 10th of November, 1903, signed, acknowledged and delivered the proposed contract in behalf of the city. After

demand made in due form upon the mayor, comptroller and city treasurer that the defendant accept the deed and pay the entire purchase price, this action was commenced on the 17th of November, 1903, to compel the city to specifically perform. No payment was ever made upon the contract, and no act authorizing the payment by the city of the $21,000 or any part thereof was ever passed by the legislature, and this fact, together with the absence of any fund to pay for said land, was pleaded as a defense to the action. Various other defenses were also pleaded, but in view of the conclusion we have reached it is unnecessary to mention them.

Upon the trial of the action at Special Term the court after finding the foregoing facts, among others, decided that the plaintiffs were entitled to judgment requiring the defendant and its officers to forthwith perform the contract. The Appellate Division unanimously affirmed the judgment entered accordingly and the defendant appealed to this court.

The primary question is whether, according to the facts found by the trial court, the city is under a legal obligation to pay the plaintiffs the sum of $21,000 and accept the deed tendered? This depends upon the subordinate question whether the contract to purchase was absolute or conditional. Assuming that the contract provided for the absolute payment of $5,000, even if the resolution did not, what is to be said as to the payment of the balance? Both the contract and the resolution upon which it was founded provided that at least the balance of $16,000 should be "paid for in such manner as the city is authorized by an act of the legislature to be passed at the legislative session commencing January 1st, 1900." This provision for payment, as we read it, is not absolute but conditional. The city did not covenant to pay the balance absolutely and in any event, but to pay it in case the legislature should so provide and it never made any provision on the subject. The contract was executory and necessarily related to the future, but legislative action was to precede performance by the city and was the condition upon which it promised to pay. That condition was precedent in time and nature to any obli-

gation on the part of the city, which was not bound when the contract was made, but was to be bound by the happening of the condition prescribed. Until then the promise was not absolute, but contingent, and it could become absolute only when the legislature acted. The resolution of the common council bound the city to perform when a special law should be passed, and until it should be passed the promise was conditional, and unless it should be passed the promise could never become effective. The condition required action by the legislature before the money could become due, and the legislature never acted. "If in fixing upon the happening of a future contingent event as the time when money is to be paid the parties intend to make the debt a contingent one and the event never happens, the creditor's right to recover will never accrue." (*De Wolfe* v. *French*, 51 Me. 420, 421.) The passage of a special act was not fixed upon with reference to mere convenience in making payment, but as the event which was to determine whether payment was ever to be made or not. Clearly the condition was not subsequent, for non-performance did not operate to defeat an absolute promise to pay, but performance of the condition was the fact upon which the contingent promise to pay was to become absolute. It was not a promise to pay *unless* something was done, but a promise to pay *if* something was done.

This case in principle is not unlike one recently decided by us in which the defendant agreed to convey land to the plaintiff upon condition that the former should "receive the title to" the premises then involved "on or before the first of October, 1902." It was held that the condition was precedent and as the defendant, acting in good faith, did not get the title on or before the day named, although he did after an action to compel him to specifically perform had been commenced, he was under no obligation to perform. (*Baldwin* v. *McGrath*, 90 App. Div. 199; 113 App. Div. 902; 188 N. Y. 606, decided April 30, 1907; see, also, *Duschnes* v. *Heyman*, 2 App. Div. 354; 158 N. Y. 735; *Cartledge* v. *West*, 2 Den. 377.)

Even if we disregard the limitation to legislation during the session of 1900 as unimportant, provided the legislature had conferred the requisite authority at any time before this action was commenced, what obligation was the city under to make the payment unless authority was conferred at some time? The authority to be obtained in the future was the measure of the obligation of the city. Its covenant was a promise to pay when authorized by the legislature, that is, upon condition that the legislature should give the authority required. The city, being the mere creature of the legislature, could not compel its creator to confer the authority and there is neither finding nor evidence that any officer of the defendant ever tried to prevent the passage of such an act as the contract contemplates. The city had no power under the White charter to raise the money required to complete the purchase by taxation during the year 1900, or any year since (§§ 96, 97, 149), but even assuming that it had, neither the contract nor the law required it to do so. "Where a way of payment is prescribed by contract or by statute, that way must be strictly pursued." (*Swift* v. *Mayor, etc., of N. Y.*, 83 N. Y. 528; *People ex rel. Ready* v. *Mayor, etc., of Syracuse*, 144 N. Y. 63.)

The agreement to pay was made under the revised charter and only upon the condition that the city should receive special authority from the legislature to pay and that authority has never been conferred. When the plaintiffs come into court asking for specific performance of the contract they can require performance only according to its terms and one of the terms is that the authority of the legislature should be given by a special act, passed for that particular purpose. The contract has no more binding force and has no different meaning because it was executed under the constraint of a. writ of mandamus than if it had been executed voluntarily and without any interference by the court. Its intent in the one case, the same as in the other, must be ascertained from the language used by the parties, in view of the surrounding circumstances, and that language cannot be enlarged or cut

down to suit the convenience or promote the interest of either party. A municipal corporation has much less power in contracting than an individual, but even if an individual purchases land upon condition, that condition is as much a part of the contract as any other stipulation appearing therein and unless the condition is waived it must be performed or the obligation to purchase does not mature. Here the condition was not within the control of either party, as both parties knew when they assented to it. They could not have intended that the contract should be specifically performed unless the proposed act should be passed, for that was the form of the promise and a promise in any other form would have been illegal, as will be shown hereafter. The plaintiffs knew that the legislature might or might not in its sound discretion give the authority required and that otherwise the covenant of the defendant rested upon an unexecuted condition. That condition is an obstacle to performance on the part of the city that has not been overcome.

The contract was really made when the common council passed the resolution over the veto of the mayor. The date when the formal writing was signed by the mayor and clerk and the circumstances under which it was signed are important only as evidence of a waiver on the part of the city of the stipulation that the proposed act should be passed during the particular session named. In view of the refusal by the mayor and clerk to sign the contract for two or three years until commanded by the court to do so, the exact date of action by the legislature might be immaterial, but action before suit brought for specific performance was necessary if the contract was to be performed according to its terms. (Pomeroy on Contracts [2nd ed.], § 319; Waterman on Specific Performance of Contracts, § 434.)

As the contract rests wholly upon the resolution adopted by the common council, the provisions of the revised charter which were then in force are alone to be regarded in testing its intent and meaning. According to that charter the resolution would have been absolutely illegal in view of the situation

of the contingent fund if passed in any other form than that
adopted. It would not only have been illegal, but every
alderman who voted for it would have been subject to a heavy
penalty, while the city would have been free from any liability
whatever. (Revised charter, § 229.) The aldermen, with a
clear appreciation of the situation, prudently took action which
did not purport to be binding according to the law then in
force, but which would be binding only upon the condition
that another law should be passed. The plaintiffs are pre-
sumed to have known that the contract would conclude
neither the city nor themselves unless authorized by the leg-
islature. " A person who deals with a municipal body is
obliged to see that its charter has been fully complied with.
When this is not done no subsequent act can make the con-
tract effective." (*Smith* v. *City of Newburgh*, 77 N. Y. 130,
136.) The intention of the common council, if at all doubt-
ful according to the language of the resolution, is made clear by
the state of the law when the aldermen took action, for unless
the contract was subject to a condition precedent they were
not binding the city but themselves.

The mandamus proceeding was conclusive only as to what
had been done before the contract was formally executed pur-
suant to the command of the court. (*Ashton* v. *City of
Rochester*, 133 N. Y. 187.) We assume that the court in issu-
ing the mandamus impliedly decided that the resolution of
the common council, in the form adopted, was valid, and we
confirm the decision; but neither the learned justice who
signed the peremptory writ nor ourselves could so hold with-
out construing the resolution and the contract to be subject
to the condition named therein. Without that condition the
contract would be void. With that condition the contract is
valid, but it cannot be specifically performed because the
condition has not been fulfilled. That condition depended for
fulfillment upon an independent body, exercising the highest
sovereign power, entirely free from the control of either party
to the action. It is doubtless true, as the court found, that
the city made no further effort to procure the requisite legis-

lation, but what more should it have done than to make the request of the senator and assemblymen which is embraced in the resolution itself? The city did not agree to do anything further and it was not bound to do anything further. The contingent nature of the contract was not involved in the mandamus proceeding because the contingency had not been resolved and the time for payment had not come around when that matter was decided. The court then held that the contract was valid and should be signed. That is all it could decide. Whether it could be specifically performed was not involved, as that question depended upon action by the legislature, which might or might not be taken. If taken before suit, the court could decree performance, but not otherwise, and, hence, the obligation to perform and the power to compel performance depended upon what might happen after the signing of the contract. (*People ex rel. Schanck* v. *Green*, 64 N. Y. 499, 506.)

Reliance is placed by the respondents upon an old case which arose long before the revised charter went into effect. (*Weston* v. *City of Syracuse*, 17 N. Y. 110.) Even if that case would apply provided the revised charter had continued in force during the political year succeeding that in which the resolution was passed, it clearly has no application under existing circumstances, because five days after the resolution was finally adopted the revised charter went out of existence and the White charter went into effect. The administration in office under the old law could not contract a debt of the kind in question which the new administration under the new law was bound to pay, unless assets were left to pay it, which was not the case. Any other construction would sanction acts that might defeat the new theory of municipal government which it was the object of the White charter to put into force.

We think that the contract under consideration is governed by a condition precedent, under the control of neither party, which has not been fulfilled and that the parties when they assented to it, knew that specific performance would be impossible unless that condition was complied with.

The judgment should be reversed, and, as the controlling facts cannot be changed, the complaint should be dismissed, with costs in all courts.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; O'BRIEN, J., concurs in result.

Judgment reversed, etc.