Cohn, J.
In February, 1936, the defendant corporation commenced a proceeding nr the United States District Court for the Southern District of New York pursuant to section 77B of chapter 8 of the Acts of Congress relating to bankruptcy (U. S. Code of 1934, tit. 11, § 207). In the proceeding, a plan of reorganization was approved by the court on March 20, 1936. The plan provided for the issuance to some creditors of certain notes of defendant to be known as “ 5% Income Notes, Series A ” and “ 5% Income Notes, Series B.”
The plan of reorganization contains the following provision: “ They [the notes] shall bear cumulative interest from March 1, 1936 at the rate of five percent (5%) per annum payable in lawful money of the United States of America on the 1st day of May in each year commencing with the 1st day of May, 1937 and up to the 1st day of May, 1945, to the registered holders thereof as of the close "of business on the last day of the preceding February, but only, however, to the extent that net earnings as hereinafter defined and applicable thereto are available for the payment of said interest. The principal and all accumulated unpaid interest on said Series A and Series B Notes shall be payable on March 1, 1946. * * * Accumulated interest at any time remaining unpaid on said Series A and' Series B Notes shall be paid on any interest payment date if and to the extent that net earnings, as hereinafter defined, applicable thereto are available for payment thereof, after interest in full shall have been paid on said Series A and Series B Notes for the year ending the last day of the preceding February. ’ ’ (Emphasis ours.)
Under both the Series A and Series B notes the maker, that is, the defendant, for value received, promises: “to pay to the registered holder hereof on the first day of March, 1946 (unless this note shall have been called for previous redemption and payment of the redemption price duly made or provided for) the sum of * * * Dollars * ■ * * in lawful money of' the United States of America, and to pay interest thereon at the rate of five per centum (5%) per annum in lawful money of the United States of America on the first day of May, 1937 and annually thereafter, up to the first day of May, 1945, to the registered holder hereof as of the close of business on the last day of the preceding February, 'but only, however, to the extent that net earnings as hereinafter defined and applicable thereto are available for the payment of said interest. Interest for the year ending February 28,1946, together with all accumulated unpaid interest *442 for any preceding period or periods, if any, shall be payable on March 1, 1946 to the registered holder hereof as of the close of business on February 28, 1946.” (Emphasis ours.)
Plaintiff is the holder and owner of seven of the income notes, the face amount of which totals $5,035. The notes were presented for payment on their due date. Defendant offered to pay the principal sum thereof but refused to pay any interest as there were no net earnings available for that purpose. The offer was declined by plaintiff who insists that in addition to the principal he is entitled to interest at the rate of 5% per annum in the sum of $2,517.50 for the ten-year period from the date of the notes to the date of maturity.
The question presented by this controversy is whether or not interest was payable on the notes upon the maturity thereof regardless of net earnings. It is conceded that there were no net earnings out of which interest could be paid and that no interest was paid at any time.
The intention of the parties must be ascertained from the language of the instruments to which, in effect, the parties subscribed, that is, the plan of reorganization and the notes, which significantly enough are denominated “ Income Notes.” The wording of the notes and of the plan of reorganization, in our view, expressly provides that .payment of interest on the principal sum of each note was to be conditioned upon receipt by defendant of net earnings. As the condition or the contingency did not occur, no payment of interest was due. The pertinent law is succinctly stated in Clark’s New York Law of Contracts, (Vol. 2, § 964) as follows: “ An agreement by a person to make payments to another from a particular fund to be realized in the future, if based on a consideration, is valid and binding, but in such a case the realization of the fund is ordinarily a condition precedent to any liability of the promisor to make the payment.” (To the same effect see Mascioni v. Miller, Inc., 261 N. Y. 1, 4-5; Koster v. Lafayette Trust Co., 207 N. Y. 336, 341; Lighton v. City of Syracuse, 188 N. Y. 499; Knudtsen v. Remmel, 141 App. Div. 445, appeal withdrawn 206 N. Y. 675; Hart v. Garrett Co., 93 App. Div. 145; Lyman v. Northern Pac. Elevator Co., 62 F. 891.) In Fidelity & Deposit Co. v. Andrews (244 Mich. 159), certain certificates issued by a trustee were construed by the Michigan court in accordance with the laws of New York. The certificate stated: “ The principal amount represented by this certificate is payable to bearer, * * * dividends will be payable thereon * * * both principal and dividends being payable in gold * * * but only from and « * *443 out of rentals received from a certain lease of railroad equipment by the Guaranty Trust Company of New York, Trustee, to the Pennsylvania Railroad * * *.”
The court, in ruling that the promise to pay was a conditional one, said (p. 162): “Manifestly the certificates were not ‘ unconditional promises or orders to pay sums certain in money. ’ The certificates on their face stated a condition materially affecting payment * * *. The certificates state
enough of the trust agreement and lease to render them less than unconditional promises to pay sums certain in money, for payment was expressly made contingent upon prospective receipts of rentals by the trustee. Where payment of an obligation is, by its terms, made subject to the performance of a lease or receipt of funds from an underlying agreement, the promise is contingent * * *.”
Plaintiff argues that by the terms of the plan of reorganization and the notes, accumulated unpaid interest was payable at maturity at all events and regardless of the existence of earnings. He urges that the provision for payment of interest out of net earnings refers only to interim interest payments during the first nine years of the ten during which the notes were to run, and not to the last interest payment date which coincides with the due date of the principal of the notes. However, the plan of reorganization provides: “Accumulated interest at any time remaining unpaid on said Series A and Series B Notes shall be paid on any interest payment date if and to the extent that net earnings, as hereinafter defined, applicable thereto are available for payment thereof, after interest in full shall have been paid on said Series A and Series B Notes for the year ending the last day of the preceding February.”
“ Any interest payment date ” obviously refers to the last interest payment date of March 1,1946, as well as to all interim interest payment dates.
It is also the contention of plaintiff that the word “ accumulated,” as used in the plan of reorganization and in the notes referring to unpaid interest, negatives any necessity for net earnings. However, plaintiff overlooks the direction in the plan of reorganization to pay cumulative interest, and in the notes to pay interest, “ but only, however, to the extent that net earnings as hereinafter defined and applicable thereto are available for the payment of said interest(Emphasis ours.) The obligation to pay interest or cumulative interest could not arise at any time until there were net earnings available for such payment. When and if for any particular year of the ten-year period net earnings had accrued in excess of 5% for that year, then such *444 excess or surplus would be available for interest which had not theretofore been paid. The unpaid interest of preceding years would then become payable only to the extent of the surplus of net earnings over the amount of interest for the current year.
Creditors bound by a plan of reorganization could properly be required to accept, in satisfaction of their claims, notes bearing interest only if actually earned. (Cf. Bankruptcy Act, § 77B, subd. [b]; IT. S. Code of 1934, tit. 11, § 207, subd. [b].) The income note creditors here, of whom plaintiff was one, were given a fair exchange for their prior claims against defendant. They received not only a note calling for the full principal amount of their respective claims but also interest from July 15, 1935, to February 29, 1936, at the rate of 6% per annum, plus 10% of the principal sum due each creditor and 10% of the interest for that period. In addition, they were given common stock of the defendant and stock warrants. Though the question as to whether the holders of the income notes were fairly treated in the plan of reorganization is by no means controlling here, what they actually received for their prior claims demonstrates that it was not unreasonable to have provided that they should receive no interest upon the new notes issued to them if there proved to be no net earnings.
Plaintiff is entitled only to the . principal amount of the notes held by him, to wit, the sum of $5,035. Judgment should, accordingly, be rendered for the plaintiff for $5,035, without costs.