JOHN J. GLADSKY, JR., Appellant, v CITY OF GLEN COVE, Respondent.

Second Department, January 14, 1991

APPEARANCES OF COUNSEL

*Siegel, Fenchel & Peddy, P. C. (Michael T. Schroder, Robert S. Schwartz* and *Victor Michaels* of counsel), for appellant.

*John V. Terrana, City Attorney,* for respondent.

### OPINION OF THE COURT

EIBER, J.

At issue on appeal is the validity of a contract of sale whereby the City of Glen Cove, as seller, agreed to convey certain waterfront property to the plaintiff, John Gladsky, Jr. Although the plaintiff now seeks to enforce the terms of this contract, we conclude, as did the Supreme Court, that General City Law § 20 (2) divests the city of the power to convey publicly owned waterfront property except by special act of the Legislature. Since legislative approval was not obtained, the city's cross motion for summary judgment dismissing the complaint was properly granted.

I

The salient facts are substantially uncontroverted. The focal point of this dispute is a .78-acre parcel of property with frontage on Glen Cove Creek. The City of Glen Cove acquired title to this waterfront property in the early 1930's, and, since 1971, has leased the property to the plaintiff, John Gladsky, Jr., who operates a commercial marina and salvage business at the site. At the time the city entered into the lease with Gladsky, the area surrounding the marina was used primarily for industrial and manufacturing purposes. In recent years, however, the neighborhood has become increasingly residential due to the construction of several waterfront condominium projects in the vicinity.

In January 1975 the City of Glen Cove published a notice of

sale soliciting bids from prospective purchasers. Gladsky responded to the notice, and on February 7, 1975, offered the city $60,000 for the property. The city accepted his bid, and in April 1975 the parties entered into a standard contract of sale, pursuant to which Gladsky tendered a down payment of $3,000.[1] Although the contract of sale provided for title to be conveyed at a closing to take place on June 16, 1975, the closing date was adjourned when a title report, prepared at the plaintiff's behest, revealed the existence of several adverse chains of title. As a result of the information contained in the title report, and in response to the plaintiff's demands that the city convey clear and marketable title, the parties subsequently entered into two additional agreements which provided, among other things, that the city would commence a proceeding to quiet title and that the closing would be postponed pending the conclusion of that proceeding. Despite its promises, however, the city never instituted a proceeding to quiet title. Indeed, it eventually became clear to the plaintiff, after further unsuccessful demands that the city engage in efforts to remove the cloud on title, that the city had no intention of honoring the terms of the contract of sale.

In December 1981 the plaintiff commenced the instant action seeking specific performance of the contract of sale. He alleged, as an alternative cause of action, that the city was guilty of a breach of contract and that he was entitled to recover damages in the sum of $500,000 as a result of the city's failure to proceed with the sale. In its answer to the complaint, the city asserted, as an affirmative defense, that the contract of sale and subsequent agreements were "illegal and unenforceable as in violation of the duly enacted Charter of the City of Glen Cove and the laws of the State of New York applicable to the conduct of municipal affairs". The litigation proceeded, albeit slowly.[2]

In February 1988 the plaintiff moved for summary judg-

---

1. Although there is some question in the record as to whether the City of Glen Cove formally executed the contract of sale, the parties do not seriously dispute the existence of an agreement to convey the property. Moreover, the record reveals that the contract of sale was ratified in two subsequent extension agreements, entered into by the city.

2. During the period between 1982 through 1985, various events occurred which do not appear to be relevant to the resolution of the instant controversy. Of some significance, however, is a stipulation entered into between the parties on June 20, 1983, which provided, *inter alia,* that the plaintiff would remain in possession of the property during the pendency of this action, at a monthly rental of $400.

ment, contending that he was entitled to specific performance of the contract because he had fully performed all of his contractual obligations and was ready, willing and able to consummate the deal. The city cross-moved for summary judgment on the ground that the contract of sale was unenforceable pursuant to General City Law § 20 (2), which prohibits a municipality from conveying title to certain types of publicly owned property, including waterfront property. The Supreme Court, persuaded by the city's argument, declared that the subject contract was null and void and that the city had acted in excess of its authority when it entered into a contract to convey that which the statute had expressly declared to be inalienable.

The plaintiff now appeals.

## II

Resolution of this controversy turns upon General City Law § 20 (2) which provides, in pertinent part, that every municipality is empowered to "take, purchase, hold and lease real and personal property within and without the limits of the city * * * and to sell and convey the same". Although the statute grants municipalities broad rights to acquire and sell real property, the Legislature, cognizant of the well-settled common-law rule that a "public trust" is impressed upon certain forms of publicly owned property (see, Brooklyn Park Commrs. v Armstrong, 45 NY 234; Village Green Realty Corp. v Glen Cove Community Dev. Agency, 95 AD2d 259; Aldrich v City of New York, 208 Misc 930, affd 2 AD2d 760), statutorily restricted a city's ability to convey such property by further providing that: "the rights of a city in and to its waterfront, ferries, bridges, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places, are hereby declared to be inalienable" (General City Law § 20 [2]).

Although the terms of General City Law § 20 (2) are unconditional, the plaintiff, relying upon the "public trust" doctrine, maintains that the statute's prohibition against alienability is not applicable unless a municipality first establishes that the subject property has been used, acquired or dedicated for a public purpose (see, Brooklyn Park Commrs. v Armstrong, supra; Matter of Ackerman v Steisel, 104 AD2d 940, affd 66 NY2d 833; Aldrich v City of New York, supra). The plaintiff submits that since the subject property was neither acquired

nor dedicated for public use, General City Law § 20 (2) may not serve as a bar to specific performance of the contract. The plaintiff's contention is not only contrary to the unambiguous language of the statute, which imposes no such qualification, but also overlooks the nature of waterfront property, which is unique because of its geographical location. While other forms of city-owned property may be converted to public use and thereby be rendered inalienable under the statute, waterfront property has been expressly declared to be inalienable, regardless of the manner in which the property is used. Although we recognize that the statutory restriction against the alienation of certain municipal property emanates, to a large extent, from the "public trust" doctrine (see, Matter of Lake George Steamboat Co. v Blais, 30 NY2d 48; Brooklyn Park Commrs. v Armstrong, 45 NY 234, supra; Matter of Central Parkway, 140 Misc 727, 729-730; Gewirtz v City of Long Beach, 69 Misc 2d 763, affd 45 AD2d 841), the Legislature did not see fit to include a public-use limitation in the statute, and we decline to engraft such a limitation in a statute which is otherwise clear and unequivocal on its face.

Nor does General City Law § 20 (7), upon which the plaintiff relies, compel a contrary result. This subdivision creates a "discontinuance" exception to the statute's blanket prohibition against the alienability of public property by empowering a municipality to "lay out, establish, construct, maintain and operate markets, parks, playgrounds and public places, and upon the discontinuance thereof to sell and convey the same" (emphasis supplied). Notably absent from the enumeration of the type of property which may be freely sold by a municipality upon the discontinuance of its public use is waterfront property. The reason for this absence is clear—waterfront property, as we have noted, is entitled to special protection by virtue of its geographical location rather than by virtue of its use. Unlike a public playground, which may cease to be a playground if its use is altered, waterfront property is intrinsically unique. That the discontinuance exception does not, and should not, apply to waterfront property becomes all the more compelling given the significant ecological, scenic, and aesthetic qualities inherent in it. Accordingly, the plaintiff's reliance on General City Law § 20 (7) is misplaced.

Mindful of the line of cases which hold that a municipality may not convey, alienate or divest itself of title to the various types of property included within the ambit of General City Law § 20 (2) except by special act of the Legislature (see,

*Grayson v Town of Huntington,* 160 AD2d 835; *Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals,* 152 AD2d 365; *Village Green Realty Corp. v Glen Cove Community Dev. Agency,* 95 AD2d 259, 260, *supra)* the plaintiff argues, in the alternative, that the city was obligated under the terms of the contract of sale to seek legislative approval of the conveyance. We note, however, that nothing in the contract expressly imposed such an obligation upon the city. Moreover, even if the contract of sale had included such a provision, it would have been of minimal value to the plaintiff, since legislative approval is a purely discretionary act which cannot be compelled *(see, Lighton v City of Syracuse,* 188 NY 499; *Village Park Assocs. v City of New York,* 156 AD2d 446). As the Court of Appeals observed in the seminal case of *Lighton v City of Syracuse (supra,* at 506-507): "[h]ere the condition was not within the control of either party, as both parties knew when they assented to it. They could not have intended that the contract should be specifically performed unless the proposed act should be passed, for that was the form of the promise * * *. Without that condition the contract would be void. With that condition the contract is valid, but it cannot be specifically performed because the condition has not been fulfilled. That condition depended for fulfillment upon an independent body, exercising the highest sovereign power, entirely free from the control of either party to the action." Accordingly, the Supreme Court correctly determined that the plaintiff was not entitled to specific performance of the contract since the State Legislature never authorized the underlying sale. Furthermore, in light of the well-settled principle that municipal contracts which violate express statutory provisions are invalid, nullification of the contract of sale was required *(see, Granada Bldgs. v City of Kingston,* 58 NY2d 705; *Seif v City of Long Beach,* 286 NY 382; *Kelly v Cohoes Hous. Auth.,* 27 AD2d 463, *affd* 23 NY2d 692).

■ There remains for consideration the question of whether the plaintiff is entitled to recover any damages as a result of the city's inability to proceed with the sale. Although the plaintiff was chargeable with the knowledge that city officials were not authorized to enter into a contract to sell publicly owned waterfront property and is, therefore, precluded from recovering damages for loss of the bargain *(see, Maidgold Assocs. v City of New York,* 64 NY2d 1121; *Granada Bldgs. v City of Kingston, supra; City of Zanesville, Ohio v Mohawk Data Sciences Corp.,* 97 AD2d 64, 66), the record reveals that

the plaintiff, in reliance upon the contract, expended certain sums for a down payment, title examination, and survey. These expenditures are recoverable by the plaintiff pursuant to the parties' agreement. Accordingly, the order and judgment is modified, on the law, by adding a provision thereto directing the defendant to return the down payment to the plaintiff, and to reimburse him for the costs of a survey and title examination procured by him; as so modified, the order and judgment is affirmed, with costs to the defendant, and the matter is remitted to the Supreme Court, Nassau County, for a calculation of the amount to which the plaintiff is entitled for these expenditures, and for the entry of an appropriate amended order and judgment.

MANGANO, P. J., BRACKEN and HARWOOD, JJ., concur.

Ordered that the order and judgment is modified, on the law, by adding a provision thereto directing the defendant to return the down payment to the plaintiff, and to reimburse him for the costs of a survey and title examination procured by him; as so modified, the order and judgment is affirmed, with costs to the defendant, and the matter is remitted to the Supreme Court, Nassau County, for a calculation of the amount to which the plaintiff is entitled for these expenditures, and for the entry of an appropriate amended order and judgment.