Justin E. Driscoll Formal Opinion Senior Vice President and Counsel No. 2007-F1 New York State Housing Finance Agency State of New York Mortgage Agency 641 Lexington Avenue New York, NY 10022
Dear Mr. Driscoll:
You have asked whether it was legal for the New York State Housing Finance Agency ("HFA") and State of New York Mortgage Agency ("SONYMA") (together, the "Agencies") to pay for health insurance benefits for current board members pursuant to Civil Service Law § 167(2), and whether it was legal to agree to provide post-retirement health insurance benefits to current and former board members who are "qualifying retired board members" as these terms are defined by the Agencies. You have also asked, assuming the Agencies were without legal authority to provide post-retirement health insurance benefits, whether contracts that the Agencies entered into with individual board members for the provision of post-retirement health insurance benefits are voidab initio or, if not, whether they can be voided by board action.
As explained below, we conclude that the Agencies lack legal authority to pay for health insurance benefits for current or retired board members. While Civil Service Law § 167(2) and implementing regulations allow unpaid public authority board members to participate in the New York State Health Insurance Program, HFA's and SONYMA's enabling acts prohibit their board members from receiving compensation for their services. We conclude that this prohibition extends to the payment of health insurance premiums by the Agencies on behalf of the board members. Consequently, because the Agencies were without statutory authority to enter contracts with board members for the provision of health insurance benefits to qualifying retired board members at the Agencies' expense, we believe those contracts are void. *Page 2 
In sum, we conclude that (1) the Agencies may not pay for health insurance benefits for their current or former board members and (2) the contracts the Agencies signed with board members to provide post-retirement health insurance benefits are void.
BACKGROUND
As outlined in your opinion request and the background materials you have provided, the Agencies began providing health insurance benefits to unpaid board members of the Agencies following a 1998 amendment to Civil Service Law § 167. You have explained that the Agencies provided unpaid board members the same health insurance benefits that were already provided to Agency employees. Such benefits currently include participation in the New York State Heath Insurance Plan ("NYSHIP") with the Agencies paying for 100% of the premium costs for individual and family coverage.
Concerned that participation in NYSHIP by unpaid board members might render the board members "state officers oremployees" within the meaning of Public Officers Law § 73, and thus subject the board members to the constraints on business and professional activities applicable to state officers and employees under section 73, the Agencies sought an opinion from the New York State Ethics Commission on this issue.[1] As set forth in a letter from the Executive Director of the Commission, the Commission determined that the provision of health care benefits is not compensation so as to bring uncompensated members of the Agencies within the definition of "state officers or employees" in Public Officers Law § 73. The Commission based its determination, in part, on its conclusion that in amending the Civil Service Law to allow unpaid public authority board members to participate in NYSHIP, the Legislature had not intended to override its earlier expressed intention to except from Public Officers Law § 73 public authority board members who are *Page 3 
uncompensated or paid on a per diem basis. The Agencies subsequently provided health insurance benefits to its unpaid board members at the Agencies' expense.
In 2005, the Agencies adopted a resolution providing post-retirement health insurance benefits to any board member who had entered their tenth year of service and who had previously opted to take advantage of the health insurance benefits offered to current board members ("qualifying retired board members"). As set forth in the resolution, the Agencies decided to provide such qualifying retired board members the same post-retirement health insurance benefits provided to retired employees of the Agencies, i.e., participation in NYSHIP with the Agencies paying 90% of the premium costs for individual coverage and 75% of the premium costs for family coverage for qualifying retired board members.
Because the Agencies were unable to enroll qualifying retired board members in NYSHIP (because regulations of the Department of Civil Service require 20 years of service for unpaid board members to receive post-retirement health insurance benefits in NYSHIP), the Agencies decided to implement the Boards' 2005 resolution by entering contracts with each current board member. Pursuant to these contracts, the Agencies agreed to reimburse each qualifying retired board member for the same percentage of his or her premiums as would be payable to retired Agency employees.
ANALYSIS
 A. Civil Service Law § 167
Your first question is whether the Agencies had legal authority pursuant to Civil Service Law § 167(2) to pay health insurance benefits for current board members.
Civil Service Law § 167(2) provides in relevant part:
 Such employer shall not be required to pay the cost of premium or subscription charges for the coverage of unpaid elected officials, or unpaid board members of a public authority, or their dependents, provided, however, that no unpaid board member of a public authority shall be eligible to participate in such insurance plan until he or she has served in such position for at least six months (emphasis added). *Page 4 
The underlined language referring to unpaid board members of public authorities was added by chapter 534 of the Laws of 1998.
Although this reference is included in the statutory section that addresses contribution requirements by participating employers,[2]
rather than in the sections that address the eligibility of employees to participate in NYSHIP, the legislative history to this amendment clarifies that the purpose of the amendment was to permit unpaid public authority board members to participate in NYSHIP. Thus, the memorandum of the bill's Assembly sponsor states that the bill would extend the opportunity to participate in the state health insurance plan to unpaid board members of public authorities, an opportunity already available to unpaid local elected officials. Letter from Assembly member Thomas P. DiNapoli (July 24, 1998), reprinted in Bill Jacket for ch. 534 (1998), at 3; see Budget Report on Bills, reprinted in Bill Jacket for ch. 534 (1998), at 5 ("Section one of the bill amends [Civil Service Law § 167(2)] to extend eligibility for enrollment in NYSHIP to unpaid board members of public authorities."). Indeed, in its memorandum commenting on the bill, the Department of Civil Service recommended that to accomplish the purpose of the bill — to enable unpaid board members of public authorities and their dependents to participate in NYSHIP — the Legislature should have amended the Civil Service Law provisions that address eligibility criteria for participation in NYSHIP, rather than section 167, which addresses contribution rates. Memorandum of Daniel W. Wall, Exec. Deputy Commissioner, Department of Civil Service (July 8, 1998), reprinted in Bill Jacket for ch. 534 (1998), at 7; see Budget Report on Bills, reprinted in Bill Jacket for ch. 534 (1998), at 5 (describing as a technical flaw the fact that the legislation addresses eligibility for enrollment in a section of the Civil Service Law that addresses required premium contributions).
Consistent with the amendment's purpose, the Department of Civil Service amended its eligibility regulations following enactment of this amendment, to include within the definition of"employee" eligible to participate in NYSHIP "an unpaid board member of a public authority, provided he or she has six months or more of service in such position." *Page 5 4 N.Y.C.R.R. § 73.1(c)(1)(iv) (promulgated July 7, 1999). The definition of "post retiree" was also amended to include a person who "was an unpaid board member of a public authority with 20 years or more of service in such position." Id. § 73.1(e)(5) (promulgated July 7, 1999).
While the 1998 amendment to Civil Service Law § 167 was clearly intended to allow unpaid board members of public authorities to participate in NYSHIP (provided the board member has served in the position for six months), the amendment's intended effect on employer contributions toward premium costs for such participation is less clear. Because the amendment is included in the Civil Service Law provision governing employer contributions, and because the provision states that the employer shall not be required to pay the cost of premiums for the coverage of unpaid board members of a public authority, the statute arguably could be interpreted as authorizing (but not requiring) a participating public authority employer to pay the cost of premiums for its unpaid board members. We understand that the Agencies interpreted the statute in this fashion.
We have been advised by the Department of Civil Service, authorized to implement this statutory provision, that the Department doesnot interpret or implement section 167(2) asexpressly authorizing public authority participating employers to contribute toward the premium costs of their unpaid board members. Rather, the Department interprets Civil Service Law § 167(2) to permit unpaid public authority board members to participate in NYSHIP and with respect to such board members excepts public authority participating employers from the otherwise-applicable requirement that participating employers contribute toward the premium costs of their employees. See Civil Service Law § 167(2) ("Each participating employer shall be required to pay not less than [50%] of the cost of premium or subscription charges for the coverage of its employees and retired employees who are enrolled in the [plans] established pursuant to this article. . . . Such employer shall not be required to pay the cost of premium or subscription charges for the coverage of unpaid elected officials, or unpaid board members of a public authority. . . .").
The letters contained in the bill jacket to the amendment adding unpaid public authority board members to Civil Service Law § 167 support this interpretation. The sponsor of the bill, as well as representatives of interested public authorities, described the amendment as having little financial impact on the State or the public because the premiums would be paid by the individual board members. See Letter from Assembly member Thomas *Page 6 
P. DiNapoli (July 24, 1998), reprinted in Bill Jacket for ch. 534 (1998), at 3; Bill Jacket for ch. 534 (1998), at 11, 12.
Therefore, in response to your first question, we conclude that Civil Service Law § 167(2) does not authorize the Agenciesto pay for the cost of health insurance benefits for unpaid board members. Inasmuch as your question is whether the Agencies had legal authority to pay for health insurance benefits on behalf of board members, this conclusion raises the issue whether any other law permits or, alternatively, prohibits the Agencies from paying for these benefits.
B. Prohibition on Receipt of "Compensation" in the Agencies' EnablingActs
The statutory powers of the Agencies are defined in their enabling acts. You have not pointed to and we are not aware of any provision in these acts that permits the Agencies to pay for the costs of premiums for health insurance benefits for current or retired board members. To the contrary, we find that because the enabling acts direct that a board member "shall serve without salary or other compensation, but each member, including the chairman, shall be entitled to reimbursement for actual and necessary expenses incurred in the performance of his or her official duties," Private Housing Finance Law § 43(2) (HFA) (emphasis added); see Public Authorities Law § 2403 (nearly identical language regarding directors of SONYMA), the Agenciesare prohibited from contributing toward the costs of the board members' participation in NYSHIP.
The language in the enabling acts indicates that the prohibition on the receipt of compensation was intended to include traditional employment benefits such as health insurance. The relevant provisions not only provide that the board members serve without salary or other compensation, but also qualify that prohibition by permitting the reimbursement of "actual and necessary expenses incurred in the performance of [the member's] official duties." Private Housing Finance Law § 43(2); Public Authorities Law § 2403(2). Thus, the Legislature has specified the minimal type of financial contribution that the Agencies may provide to their board members — only actual and necessary expenses. Obviously, actual and necessary expenses incurred in the performance of official duties does not include health insurance benefits. Moreover, health insurance benefits are generally considered a form of compensation. Op. State Comp. No. 91-44; Op. State Comp. No. 88-64;see Aeneas McDonald Police Benevolent Ass'n v. City of Geneva,92 N.Y.2d 326 (1998) (health insurance benefits as a form of compensation are a term of *Page 7 
employment and thus a mandatory subject of negotiation under the Taylor Law); Matter of Police Ass'n of the City of Mount Vernon v. NewYork State PERB, 126 A.D.2d 824 (3d Dep't 1987) (same); Matter of Townof Haverstraw v. Newman, 75 A.D.2d 874, 882 (2d Dep't 1980) (same). Thus, based upon the language of Civil Service Law § 167(2), and in accord with the generally accepted meaning of the term "compensation," we believe the reference to "other compensation" in the Agencies' enabling acts includes employer contributions toward health insurance premiums.
The enactment history of these provisions also supports our conclusion. Prior to 1992, the board members of both Agencies were statutorily entitled to specific per diem fees: The members of HFA served without salary, but were entitled to actual and necessary expenses and a per diem allowance of $50 when rendering service as a member, up to $2,500 in one fiscal year. Private Housing Finance Law § 43(2) (McKinney's 1991). At that time, the chairman of the HFA board received a statutory salary of $25,000. Id. Members of SONYMA were entitled to expenses and a per diem allowance of $100 when rendering service, up to an annual sum of $5,000. Public Authorities Law § 2403(2) (McKinney's 1981). The directors of SONYMA were authorized to determine the salary of the chairman. Id.
In 1992, the per diem allowances and the chairs' salaries were eliminated from both enabling acts, and the statutes were amended to prohibit the members and chair from receiving salary or othercompensation. By specifically deleting the statutory authorization for per diem fees and by adding the prohibition on receiving "other compensation," we believe the Legislature intended to prohibit the board members from receiving any financial remuneration, including health insurance premiums, except reimbursement of actual and necessary expenses.
The fact that the compensation at issue here is not in the form of monetary payment, but rather the benefit of paid participation in NYSHIP, does not alter our conclusion. The 1992 amendment, which amended the enabling acts of more than 50 state commissions, boards, and public authorities to eliminate compensation (previously permitted salaries and per diem fees) of board members, was intended as a cost-saving measure and was passed as part of the revenue bill implementing the Governor's 1992-1993 fiscal year budget. See Memorandum of Assembly Rules Committee, reprinted in 1992 N.Y.S. Legislative Annual 39, 40. The prior history of this proposal further demonstrates that it was designed as a cost-saving initiative. *Page 8 
Prior to the 1992 omnibus revenue bill, the governor had submitted numerous bills consolidating various state boards and commissions and eliminating compensation for the 56 targeted boards and public authorities. See Governor's Memorandum in Support, 1991 Department Bill # 468 (describing the elimination of board member compensation as "generat[ing] significant savings without any adverse impact on the State's ability to deliver essential services"). The amendment of HFA's and SONYMA's enabling acts, along with the similar amendment of many other authority's enabling acts, was thus intended to save public moneyby eliminating all compensation for the affected authorities' board members and providing for the uniform receipt of only actual expenses. Therefore, whether the board members actually receive payment from the Agencies to allow them to purchase health insurance, or receive the benefit of participation in NYSHIP through the Agencies' payment of premiums on their behalf, we believe the receipt of such benefits constitutes "compensation" prohibited by the enabling acts.
We note that our conclusion is consistent with an opinion of the State Comptroller concluding that board members of fire districts, who like unpaid public authority board members may participate in NYSHIP pursuant to Civil Service Law § 167(2) and who similarly are statutorily prohibited from receiving compensation, could not receive health insurance benefits through NYSHIP at the expense of the fire district. See Op. State Comp. No. 91-44 (concluding that the authorization of the Civil Service Law and regulations regarding eligibility for participation in NYSHIP must be read together with the Town Law provision prohibiting fire district commissioners from receiving compensation for services).
Having determined that the Agencies are without legal authority to pay for all or part of the health insurance benefits on behalf of current board members, we likewise conclude that there is no legal basis for the Agencies to pay for health insurance benefits for retired board members or reimburse retired board members for the cost of health insurance premiums. See Boryszewski v. Brydges, 37 N.Y.2d 361, 367-68 (rejecting state constitutional challenges to public retirement plan based onholding that retirement benefits are a component of present compensation);Etkin v. Capital Dist. Reg'l Off-Track Betting Corp., 9 A.D.3d 674,675-76 (3d Dep't 2004) (holding that post-employment health and life insurance benefits constitute deferred compensation); Op. State Comp. No. 86-5 (noting that pensions andother benefits provided to retirees are generally held to be part of earned compensation of public officers and employees that are deferred until retirement). *Page 9 
C. Effect of Contracts for Reimbursement of Health Insurance Premiumsfor Qualifying Retired Board Members
Your final question is the effect of the contracts that the Agencies entered into with individual board members in 2006 pursuant to which the Agencies agreed to reimburse qualifying retired board members for a portion of their health insurance premiums. Inasmuch as we have concluded that the Agencies lack legal authority to pay for health insurance benefits for current or retired board members, you ask whether these contracts were void ab initio when entered into or whether they now may be voided by board action.
As a general principle, contracts prohibited by law are "absolutely void." Village of Fort Edward v. Fish, 156 N.Y. 363,371 (1898). While this general rule does not apply in certain circumstances,[3] courts have applied this rule to contracts that a public body entered into without express or implied statutory authority. See Matter of Niland v.Bowron, 193 N.Y. 180 (1908) (refusing to enforce compromise of claim against town where town highway commissioner had entered contract without statutory authority); Village of Fort Edward v. Fish, 156 N.Y. 363,371(1898) (contract by board of water commissioners for sale of bonds for an amount less than par value was void where statute directed that bonds should not be disposed of for less than par value); Gladsky v. City ofGlen Cove, 164 A.D.2d 567, 572 (2d Dep't 1991) (applying the "well-settled principle that municipal contracts which violate express statutory provisions are invalid" to nullify a City contract to convey waterfront property that violated General City Law § 20); New Paltz,Highland Poughkeepsie Traction Co. v. County of Ulster, 202 A.D. 234
(3d Dep't 1922) (contract entered into by county and town purporting to allow railway company continued access to lands after it removed its tracks was unenforceable where municipalities lacked statutory authority to enter contract). We have concluded that *Page 10 
the statutes pursuant to which the HFA and SONYMA board members are appointed prohibit the Agencies from paying for health insurance benefits for current and retired board members. Because the governing statutes thus prohibit the Agencies from entering contracts to provide such benefits, we believe the general rule — that contracts entered into by a public entity in violation of statutory authority are void — would apply here.
CONCLUSION
For the foregoing reasons, we conclude that the Agencies are without legal authority to pay for any portion of the health insurance premiums for their current and retired board members. Accordingly, we believe the contracts entered into by the Agencies pursuant to which the Agencies agreed to reimburse qualifying retired board members for their health insurance premiums were made without legal authority and are thus void.
Very truly yours,
ANDREW M. CUOMO Attorney General
[1] Public Officers Law § 73 defines "state officer or employee" to include "members or directors of public authorities, other than multi-state authorities, public benefit corporations and commissions at least one of whose members is appointed by the governor, who receive compensation other than on a per diem basis, and employees of such authorities, corporations and commissions." Public Officers Law §73(1)(i)(iv). Therefore, board members of such entities who do not receive compensation, or who receive compensation only on a per diem basis, are not included in the definition of "state officer or employee" in this statute.
[2] Participating employers are public authorities, public benefit corporations, school districts, special districts, district corporations, and municipal corporations who may, pursuant to Civil Service regulations, elect to participate in NYSHIP on behalf of their employees. See Civil Service Law § 163(4).
[3] In certain situations a contract that violates a statutory provision will nonetheless be enforceable: "`If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy. . . the right to recover will not be denied.'" Lloyd Capital Corp. v. Henchar, Inc.,80 N.Y.2d 124, 127 (1992) (quoting Rosasco Creameries v. Cohen,276 N.Y. 274,278 (1937)). However, it appears this exception has been limited to contracts between private parties. See, e.g., id. *Page 1